## GOLDEN REWARD MIN. CO. v. BUXTON MIN. CO.

(Circuit Court of Appeals, Eighth Circuit. October 23, 1899.)

### No. 1,173.

**1. EVIDENCE—MATERIALITY—TENDENCY TO CONFUSE JURY.**

The general rule that testimony which is relevant to an issue will be admitted, without regard to its weight, is subject to the qualification that testimony, although it has some tendency to establish a material fact, may be and should be rejected when its admission will have a tendency to divert the attention of the jury from the precise issues involved in the case, and, by raising collateral issues, protract the trial beyond reasonable limits.

**2. SAME.**

In an action against a mining company for trespassing upon and extracting ore from a claim owned by plaintiff, the principal issues litigated being as to the quantity and value of the ore taken by defendant from plaintiff's claim, defendant offered testimony to show the total number of miners engaged in working in its mines, including several on its own claims, the number working on plaintiff's claim, the total production from all the mines, and that each man took out about the same quantity of ore per day, on an average, in all the workings, as tending to show the quantity taken from plaintiff's claim; also, the assays made of each shipment of ore at the mill, for the purpose of showing the value of plaintiff's ore. *Held*, that such testimony was properly rejected, as its admission would have involved the trial of extensive collateral issues, as to the comparative facility with which the ore could be mined in the different workings, and its comparative richness.

**3. SAME—OPINION OF EXPERT—VALUE OF ORE.**

In an action to recover the value of ore wrongfully extracted by defendant from plaintiff's claim, where plaintiff had no knowledge of the trespass until after the work had ceased, a mining engineer, shown to be familiar with the ore deposits in the locality, may be permitted, as a witness for plaintiff, to state his opinion, based upon the assay of samples taken by him from the side walls of the abandoned workings, and upon the testimony of the miners who worked therein as to the character of the ore taken therefrom, as to the average value of the body of ore removed.

**4. SAME—RELEVANCY.**

On such a trial evidence is admissible of the average assay value of samples of ore taken from the side walls of the workings and from drifts immediately adjacent, and shown to have been of the same general character as the body of ore removed; the weight and value of such evidence to be determined by the jury in view of all the evidence.

**5. DAMAGES—REMOVAL AND CONVERSION OF ORE FROM MINING CLAIM—STATE STATUTE.**

The provision of the Code of South Dakota (Comp. Laws Dak. 1887, § 4603) fixing the measure of the damages recoverable for wrongful conversion of personal property as the value of the property at the time of conversion, with interest, or. where the action has been prosecuted with reasonable diligence, the highest market value of the property at any time between the conversion and the verdict, without interest, at the option of plaintiff, governs in actions in the federal courts within the state, and is applicable to an action for trespass upon a mining claim, where the only damage claimed or litigated is the value of the ore removed therefrom and converted by defendant; the action being in effect, though not in form, one for the conversion of personal property.

In Error to the Circuit Court of the United States for the District of South Dakota.

The Buxton Mining Company, an Iowa corporation, brought this action against the Golden Reward Mining Company, a corporation of South Dakota, to recover damages for a wrongful entry upon its property, situated in the state of South Dakota, known as the "Bonanza Lode Mining Claim," and for the removal therefrom and conversion to its own use of a large amount of gold and silver-bearing ore, alleged to be of the value of $200,000. The Golden Reward Mining Company, the defendant below, and the plaintiff in error here (which will be referred to hereafter as the defendant), filed a general denial, which merely put in issue the commission of the alleged trespass, and did not seek to justify it. There was a lengthy trial before a court and a jury, lasting from February 9, 1898, until March 18, 1898, when the jury returned a verdict against the defendant below in the sum of $61,500, on which verdict a judgment was subsequently entered in favor of the plaintiff below. The proceedings at the trial are brought before us for review by a writ of error.

William L. McLaughlin and William R. Steele, for plaintiff in error.

Eben W. Martin (Norman T. Mason, on the brief), for defendant in error.

Before CALDWELL, SANBORN, and THAYER, Circuit Judges.

THAYER, Circuit Judge, after stating the case as above, delivered the opinion of the court.

Preliminary to any discussion of the numerous errors that have been assigned, it will be advantageous to state certain facts which are practically undisputed. The parties to the suit are the owners of adjoining mining claims in the state of South Dakota. It will suffice to say generally concerning the location of the claims that the Bonanza claim, which belonged to the plaintiff below, and on which the trespass was committed, lay immediately to the west and south of two claims, the Silver Case and the Tilton, which belonged to the defendant company. Prior to August, 1891, the defendant had done a great amount of mining, not only on the Silver Case claim, which lay to the east of the Bonanza claim, but also on another claim which it owned, known as the "Golden Reward Claim," which latter lay immediately to the east of the Silver Case, and on certain other claims not necessary to be mentioned. It had extensive underground workings on both of the last-mentioned claims, consisting of tunnels, stopes, and levels, whereas the Bonanza claim was at that time practically undeveloped, no work of importance having been done thereon or thereunder. Subsequent to July, 1891, the defendant company extended two of the drifts or tunnels on its own property across the boundary line, and underneath the Bonanza claim, and there excavated two stopes, known as "Stope No. 2 West and Stope No. 3 West," from which it extracted a large amount of mineral-bearing ore between the months of August, 1891, and August, 1892. The trespass so committed was not discovered by the plaintiff company until shortly prior to November 20, 1895, when the present action was brought; and the discovery at that time was due to the fact that the excavation of the aforesaid stopes ultimately caused the superimposed earth to settle, making depressions on the surface. As soon as the depressions became visible, the plaintiff company set on foot an investigation, which speedily developed the extent of the trespass. While the defendant company by its answer

denied the trespass, yet on the trial such defense was practically abandoned, and the trial resolved itself into a consideration of three issues of fact: First, what was the quantity of the mineral taken from stopes Nos. 2 and 3 west, underneath the Bonanza claim? second, what was the value of the mineral so abstracted? and, third, was the trespass committed knowingly and willfully? A large amount of testimony was taken on these issues, very little of which has been preserved in the bill of exceptions. Errors to the number of 66 have been assigned by the defendant company, many of which are of little moment, and for that reason they will not be noticed in detail, although they have been duly considered. Counsel, in the elaborate briefs which have been filed, have themselves found it impossible to consider each of the assignments separately, but have grouped them and argued them by groups. We may well follow their example. Whether the judgment should be affirmed or reversed is a question which must depend for its answer on a few exceptions taken during the progress of the trial, that were principally discussed in the argument, which we will now proceed to consider, though not in the exact order adopted by counsel.

During the progress of the trial, counsel for the defendant company inquired of a witness how many men were employed by the defendant in its mines upon the Golden Reward and the Silver Case claims at the time when ore was being extracted from stopes Nos. 2 and 3 west, underneath the Bonanza claim. This question was objected to, whereupon counsel for the defendant made the following statement, in substance: That they proposed to show that during the period in question, from September 1, 1891, to August 1, 1892, the defendant kept an accurate account of the number of men employed in all of its mines located within the territory which it was then working, and that they were all worked together, as constituting one property; that the conditions under which mining was done in its own territory were the same as the conditions in stopes 2 and 3 west, and that the same number of men would break approximately the same amount of ore in the said stopes as in the stopes on its own claims; that during the period inquired about the total output from all the mines, including stopes 2 and 3 west, was from 25 to 40 tons per day; and that by dividing the whole output from all the mines by the total number of men employed, and thus ascertaining the average output per man, and by multiplying the average output per man by the number of men whom the jury might find were employed in stopes Nos. 2 and 3 west, while they were being worked, the jury could thus ascertain the number of tons of ore taken from said stopes Nos. 2 and 3 west, within the plaintiff's territory. This offer of proof was rejected, and an exception was saved. At another stage of the trial the defendant also offered in evidence a book kept by it, which was known as its milling or assay book, first having supplemented the offer by testimony to the following effect: That, during the period covered by the alleged trespass (that is to say, from about September 1, 1891, to about August 1, 1892), ores were received by the defendant by rail at its mill, which was some distance from the mines, in a mixed state, which came

from different localities on the Golden Reward and Silver Case claims and from stopes Nos. 2 and 3 west, underneath the Bonanza claim; that these ores were first crushed and roasted, and by that means were prepared for the chlorination barrels; that the ore was sampled and assayed immediately before it was placed in the chlorination barrels, and that it was also sampled and assayed after it had undergone the process of chlorination, the result of the two assays showing what amount of the precious metals therein contained was saved by the process and what amount was lost; and that a faithful record of these assays was kept in its milling or assay book during the entire period aforesaid. The cross-examination of witnesses in connection with the offer of the assay book developed the fact, however, that the ores thus mixed and assayed came from all parts of the defendant's territory which it was then engaged in working, as well as from stopes Nos. 2 and 3 west, underneath the plaintiff's claim, that some of the ores thus assayed came from a locality three-fourths of a mile distant from stopes Nos. 2 and 3 west, and that 1,000 feet intervened between those stopes and other localities from which ore was drawn which entered into the aforesaid assays. Besides, there was other evidence introduced which tended to show that while the trespass was in progress the defendant company failed to keep a daily record of the number of cars of ore taken from its mines, and the locality from whence it was derived, as it had done prior to the commission of the trespass, and that it had also filled up stope No. 3 west, and had closed the entrance thereto, and had blasted out the timbers after the stope was exhausted, which was an unusual proceeding among miners. The assay or milling book was rejected when the same was offered, and an exception was likewise saved. The two exceptions thus noted have been argued at considerable length in this court, and, as the merits thereof involve an application of the same general rules of evidence, it has been deemed most convenient to consider them together.

As a general rule, any evidence is admissible which has a reasonable tendency to establish a material fact in controversy, provided the evidence is not of a hearsay character or otherwise incompetent. Insurance Co. v. Weide, 11 Wall. 438, 440. If testimony is relevant to an issue, it is generally admissible, and the courts will not ordinarily consider its weight, but will leave that question to be determined by the jury. This general rule, however, is subject to the important qualification that testimony which does have some tendency to establish a material fact may be rejected by a trial judge, and should be rejected, when its admission will have a tendency to divert the attention of the jury from the precise issues involved in the case, and protract the trial beyond reasonable limits. This limitation of the general rule requiring all relevant testimony to be admitted, to which we have last alluded, is not only reasonable in itself, but it is well supported by the authorities. Schradsky v. Stimson, 40 U. S. App. 455, 22 C. C. A. 515, and 76 Fed. 730; Wentworth v. Smith, 44 N. H. 419; Lincoln v. Manufacturing Co., 9 Allen, 181, 187; Phillips v. Town of Willow, 70 Wis. 6, 34 N. W. 731; Parker v. Publishing Co., 69 Me. 173; Thomp-

son v. Bowie, 4 Wall. 463, 471; 1 Greenl. Ev. § 62, and cases there cited. The professed object which the defendant had in view in tendering proof of the total number of men who were employed in its mines during the period of the trespass, and in offering its milling or assay book, was to show by the first item of proof the total amount of ore taken from stopes Nos. 2 and 3 west, and by the second item, or by the assay book, the richness or assay value of such ore. It is obvious that the probative value of the testimony which was thus offered depended altogether upon the assumption made in the one instance that a miner could extract the same quantity of ore each day whether he worked in stopes Nos. 2 and 3 west, or in any of the numerous stopes and drifts where ore was being mined within the defendant's claims, and upon an assumption made in the other instance that all the ores which were mixed and assayed during the period in controversy were of about the same value, no matter from what source the same were derived. If the testimony in question had been admitted, therefore, it is clear that the plaintiff would have been entitled to show the fallacy of each of these assumptions, namely, that the character of the rock in which the ore was imbedded, or the facilities for getting at it and extracting it, were such that more ore could be obtained in a single day from stopes Nos. 2 and 3 west than from other stopes within the defendant's territory, and that the ores taken from stopes 2 and 3 west were of much greater value than the other ores that were mined on the defendant's claims, with which they had been mixed. In other words, if the objectionable testimony had been admitted, it would have led necessarily to a lengthy inquiry before the jury as to the quantity and value of the ore found in all of the defendant's workings within the Golden Reward and Silver Case claims, and as to the character of the rock in which the ore within said claims was imbedded, and as to the facilities which existed during the period of the trespass for extracting it. As nearly six weeks were consumed in ascertaining the amount and value of the ore extracted from the two stopes on the plaintiff's claim, which were the principal issues involved, it is apparent that the trial would have been interminable, and that the attention of the jury would have been unduly distracted, had the trial court admitted evidence which would have permitted such issues to be raised with respect to the ore mined on the defendant's claims during the period of the trespass. Besides, it would have been not only unfair but extremely prejudicial to the plaintiff, if, after the defendant had opened its case and made considerable progress therein, a class of testimony had then been admitted which would have compelled the plaintiff, for its own protection, to make a careful examination of the stopes, levels, and drifts within the defendant's territory, even if such an examination was then possible, for the purpose of showing in rebuttal what was the amount and value of the ore which the defendant had obtained within its own claims while stopes Nos. 2 and 3 on the plaintiff's claim were being worked. The answer of the defendant was simply a general denial of the trespass, and the plaintiff had no reason to anticipate the produc-

tion of such proof as was tendered by the defendant for the purpose of establishing the quantity and value of the ore that had been taken from the plaintiff's territory; nor was the plaintiff under any obligation to make preparations in advance to meet and rebut such evidence. Rules of evidence will sometimes be relaxed on the ground of necessity,—that is to say, because of the impossibility of obtaining proof which has a more direct bearing on the issue involved than that which is tendered; but in the present instance the evidence which was offered by the defendant company could not have been admitted with any propriety on the ground of necessity. The record shows that there was an abundance of direct evidence to establish both the quantity of the ore, and the richness of the same, that had been taken from stopes Nos. 2 and 3 west. The defendant offered direct testimony (being that of its superintendent, and that of its miners who had worked in the two stopes on the plaintiff's claim) showing the quantity of ore taken from those stopes. It also introduced a record of assays, which were made by its own superintendent, of the ores in stopes Nos. 2 and 3 west while it was working the same. The quantity of ore contained in these stopes could also be computed with reasonable accuracy by reference to their dimensions. Moreover, both parties entered these stopes after the present suit was instituted, and selected samples from the side walls, and had them assayed, and in this way were able to establish with great certainty the richness of the ore which the stopes had contained. Having such direct evidence at its command, the defendant company had no right to fortify it by evidence of the kind above indicated, which would have introduced numerous collateral issues, and lengthened the trial indefinitely. We are of opinion, therefore, that the trial court properly excluded the testimony to which the foregoing discussion relates.

Several exceptions were taken by the defendant during the trial to the admission of expert testimony, and, as considerable prominence is given in the brief to these exceptions, they will be here noticed. The evidence to which the exceptions are addressed is of the following character, and it was admitted under the following circumstances: Prof. Walter P. Jenney, a mining engineer and geologist who had had large experience in that capacity in the Black Hills of South Dakota since the year 1875, was called as a witness by the plaintiff company. He stated in a general way his familiarity with the ore deposits that are found in the locality where the Bonanza, Golden Reward, and Silver Case claims are located, and that he had examined stopes Nos. 2 and 3 west, in the Bonanza claim, since they had been excavated, and had computed the number of cubic feet of rock that had been removed from the stopes, and that in the course of such examination he had taken samples of the mineral-bearing ore which he found in the side walls of said stopes and in the drifts leading thereto, and had had the samples assayed. Other witnesses, it seems, had preceded him, who had worked in stope No. 3 while it was being excavated by the defendant, and who had described the character of the ore found therein;

classifying it, in miners' language, as "brown ore," and in some instances as "kidney ore," and in other instances as "blue ore." Prof. Jenney's attention was called to this testimony which had been adduced, and, on the assumption that the character of the ore extracted had been correctly described by the miners, he was asked if he was able to form a judgment as to the general character of the ore body that had been removed from stope No. 3. To this question an objection was interposed, but it was overruled by the court, and an exception was saved. Other questions of a like character were also asked, and the witness was permitted to answer the same. In reply to such questions Prof. Jenney expressed the opinion, in view of his own examination of the stope and the testimony of the miners, that the ore that had been taken from stope No. 3 "was a clean body of ore, and of high grade." He further testified in the same connection that in his opinion the value of the ore that had been extracted from stope No. 3 would average in value 75 per cent. of the average assay value of that ore which he had himself taken from the side walls of the stope and caused to be assayed. He placed a lower value on the ore body found in the stope, because the samples selected by himself, in his judgment, were of a better grade than the whole ore body would average. The witness from whom this evidence was elicited was certainly competent, by reason of his training and experience, to form an opinion on the subject to which the inquiries were addressed which would be more reliable than an opinion formed by a person who lacked his special knowledge, training, and experience. Moreover, we think that the testimony of the miners concerning the kind of ore that had actually been extracted from the stope, coupled with the knowledge which the witness had acquired by a personal examination of the locality and by the selection of samples from the side walls, removed the opinion, which was expressed, from the field of speculation and conjecture, and entitled it to great weight as a scientific deduction from known facts. The plaintiff had no means of producing better evidence of the richness and value of the ore that had been mined on its claim, because it was taken without its knowledge or consent, and without any opportunity on its part to have the same assayed, and it might well object to having the value of the ore assessed according to assays that had been made by the defendant company. We think, therefore, that the testimony in question was clearly admissible, within the rule applicable to the introduction of expert testimony which has heretofore been recognized and applied by this court and by many other courts. Railway Co. v. Edwards, 49 U. S. App. 52, 24 C. C. A. 300, and 78 Fed. 745, and cases there cited; Railway Co. v. Hall, 32 U. S. App. 60, 14 C. C. A. 153, and 66 Fed. 868; Edward P. Allis Co. v. Columbia Mill Co., 27 U. S. App. 583, 12 C. C. A. 511, and 65 Fed. 52; Hardy v. Merrill, 56 N. H. 227; Mercer v. Vose, 67 N. Y. 56.

Another exception was saved by the defendant to the introduction of certain evidence, which deserves a brief notice. The plaintiff company was allowed to show the average assay value, as made by a competent assayer, of certain samples of ore that had been taken,

as it seems, by Prof. Jenney and some other persons from the side walls of stope No. 3 west, and adjoining drifts in the Bonanza claim, after the trespass was discovered. The proof was offered, evidently, to establish the value of the ore body that had been removed by the defendant from stope No. 3, but its admissibility for that purpose is challenged by the defendant. It is insisted, in substance, that the admission of evidence showing that the average value of samples of ore taken from the inside of stope No. 3 was $41.75 per ton, and that the average assay value of other samples taken from places immediately adjoining the stope was $48.69 per ton, was an error prejudicial to the defendant, which warrants a reversal. The record recites, however, that, before the average assay value of these samples was proven, it was shown that all the samples of ore taken from outside of the stope were taken immediately adjacent thereto, as it had been worked out by the defendant, and that the ore bodies from which said samples were derived were of the same general character as the ore mined out of said stope, and a continuation of the same ore body. The record also shows that, when the average assay value of the several samples was admitted in evidence, the trial judge cautioned the jury that the average assay value was not to be taken as an absolute mathematical demonstration of what the value of the ore body in stope No. 3 was, but that the proof was admitted simply for their consideration, and that they should give it such weight as they thought it ought to receive; first considering whether the samples were fairly representative of the body of the ore that had been extracted from the stope. In view of the locality from which the ore samples were taken, and its proximity to the stope, and in view of the caution administered by the court when the objectionable testimony was admitted, it cannot be successfully claimed that an error was committed. The testimony certainly had a marked tendency to establish the grade of the ore which the defendant company had appropriated.

This brings us to a consideration of the most important contention of the defendant company, namely, that the action was tried throughout by the lower court under an erroneous view of the measure of damages which was applicable to the case. The Code of South Dakota provides (Comp. Laws Dak. 1887, § 4603) that:

"The detriment caused by the wrongful conversion of personal property is presumed to be: (1) The value of the property at the time of the conversion with interest from that time; or, (2) where the action has been prosecuted with reasonable diligence, the highest market value of the property at any time between the conversion and the verdict, without interest, at the option of the injured party; and, (3) a fair compensation for the time and money properly expended in pursuit of the property."

The trial court held, in substance, that the aforesaid statute gave the plaintiff the right to elect to take the value of the ore when the suit was instituted; and it accordingly instructed the jury to assess the value of the ores that had been wrongfully appropriated by the defendant company "as of the month of November, 1895," and to award the value of the same at the mouth of the mine, without interest, and without deducting the cost of breaking and ele-

vating the ore, if they found the trespass to have been committed willfully and intentionally, but to deduct such expenses from the value of the ore at the mouth of the mine if they were satisfied that the trespass was committed unintentionally while the defendant supposed that it was within its own territory. The court declined to instruct the jury, as it was requested to do by the defendant, that the value of the ores should be assessed as of the date of their conversion, "with interest from that time to the date of the trial"; the conversion having taken place between September 1, 1891, and August 1, 1892. In this connection it should also be stated that the amended complaint on which the case was tried was filed on September 22, 1896, and the original complaint on November 20, 1895. In the amended complaint the plaintiff claimed damages in the sum of $220,000, "and interest at the rate of seven per cent. per annum from November 20, 1895." During the progress of the trial, and before the plaintiff's case was concluded, it asked and obtained leave to strike out the aforesaid claim for interest which was contained in the amended complaint; thus leaving a prayer for damages in the sum of $220,000. The defendant objected to the amendment, and saved an exception. Before the amendment was allowed, the trial court gave the defendant leave, however, to make a showing that the amendment would take it by surprise, but the record recites that it failed to make such a showing. Moreover, before the amendment was allowed, the plaintiff made a showing, at considerable length, that, after the discovery of the depressions on the surface of its claim, it had taken prompt action to discover the trespass, and had brought the necessary legal proceedings to maintain its rights, and had prosecuted the suit at bar, after it was brought, with all reasonable diligence. The showing of diligence so made was satisfactory to the trial court, and induced it to allow the claim for interest to be expunged from the amended complaint. The showing made in this behalf, as disclosed by the record, has also served to convince this court that from the time the trespass was discovered the plaintiff exercised commendable diligence in the assertion of its rights, and is not chargeable with negligence or any unnecessary delay. It is manifest, we think, that the trial court, in permitting the interest claim to be expunged from the amended complaint under the circumstances aforesaid, was not guilty of an abuse of its discretionary powers, and further discussion of that point is unnecessary. The substantial question to be considered is whether the statutory rule for the assessment of damages for the conversion of personal property which prevails in South Dakota is fairly applicable to the case at bar. If it is, then we perceive no error in the various proceedings above detailed. This court has twice decided, as a proposition of general law, and, as we think, in accordance with the decided weight of authority on that point, that a person who invades another's property, and appropriates and removes therefrom valuable ore or timber, and does so in the honest belief that it belongs to him, or that he has the right to appropriate it, can only be held liable to the true owner of the converted property, if it is ore, for its value as it was in place (that is to say, in

the mine before it was broken down), whereas, if the trespass was committed willfully and intentionally, or if the trespasser was so far negligent as to justify an inference that he acted knowingly and intentionally, then he may be held liable for the value of the ore taken, with interest thereon from the date of the conversion; such value to be estimated at the mouth of the mine, without any allowance for the expenses which the trespasser may have incurred in breaking and raising it. Mining Co. v. Turck, 36 U. S. App. 208, 220, 221, 17 C. C. A. 128, and 70 Fed. 294; Durant Min. Co. v. Percy Consol. Min. Co., 35 C. C. A. 252, 93 Fed. 166. See, also, E. E. Bolles Wooden-Ware Co. v. U. S., 106 U. S. 432, 1 Sup. Ct. 398; Benson Min. Co. v. Alta Min. Co., 145 U. S. 428, 12 Sup. Ct. 877. It must be conceded, however, that it is competent for a state to change any of the common-law rules for the assessment of damages for an injury done to either real or personal property situated within its borders, or for the wrongful conversion of personal property there located, and that when such rules are modified by state legislation the local law must be enforced both by the state and the federal courts. Railroad Co. v. Hogan, 27 U. S. App. 184, 11 C. C. A. 51, and 63 Fed. 102; Gregor v. Hyde, 27 U. S. App. 75, 10 C. C. A. 290, and 62 Fed. 107; Bank v. Basuier, 27 U. S. App. 541, 12 C. C. A. 517, and 65 Fed. 58. While it must be conceded that the suit at bar is in form an action for trespass upon real property, yet we are persuaded that this fact is not a conclusive reason why the state statute relative to the assessment of damages for the wrongful conversion of personal property should be held inapplicable. In an action for trespass on realty, it is permissible, both under the Code of Procedure and at common law, to recover damages for the wrongful conversion of personal property, as well as for an injury done to the realty, when the taking and conversion of personal property are coincident with the injury done to the realty, or are the result of the same act or a continuous series of acts. In such cases the two kinds of damage may be recovered under one and the same count, where both species of damage are properly alleged and claimed. Coke Co. v. Reitz, 14 Ind. App. 478, 39 N. E. 541, and 43 N. E. 46. In the case at bar the trial, as we have before stated, resolved itself into an inquiry as to the amount and value of ore that had been broken down in two stopes, which the defendant company subsequently removed and converted to its own use. It was not claimed that an injury had been done to the realty, except by the conversion of the ore; nor was any such damage assessed by the jury, or authorized to be assessed, under the instructions which were given by the trial court. The wrong complained of, for which compensation was demanded, was the unlawful conversion of the mineral-bearing ores after they had been broken down and converted into personalty. The action, therefore, was in its essence a suit for the wrongful conversion of personal property, notwithstanding the fact that the complaint also charged a trespass upon real property. In view of these considerations, we are of opinion that the statutory rule for the assessment of damages which entitles a plaintiff in the state of South Dakota, whose property has been there wrongfully taken and con-

verted, to demand "the highest market value of the property at any time between the conversion and the verdict, without interest," provided the action has been prosecuted with reasonable diligence, was properly applied in the case now in hand. We can conceive of no sufficient reason why the form of the action should deprive a plaintiff of the benefit of the rule, when, as in the present instance, it transpires that the action is essentially one for the wrongful conversion of personal property, and when no other kind of damage is recovered.

It is claimed by the defendant company that as improvements in the method of extracting the precious metals from such ores as are involved in the present controversy had reduced the cost of reduction between September 1, 1891, when the trespasses began, and November 20, 1895, when the suit was instituted, thereby making the ore more valuable in the market at the later date, the rule for the assessment of damages which was applied, giving the plaintiff the value of the ore on November 20, 1895, operated to its prejudice. This is doubtless true; but, on the other hand, it may be said that by electing to take the value at the later date the plaintiff thereby sacrificed a large sum, amounting to several thousand dollars, on account of interest which he would have been entitled to recover had he thought proper to take the value of the ores at the time of their conversion. These considerations, however, are unimportant, if the plaintiff has received no greater compensation for the wrong committed than he is entitled to demand under the laws of the state where it was committed; and we feel confident that such is the fact, when the local statute above quoted is properly construed and applied.

This action, as we have before intimated, was tried at unusual length, and doubtless at great expense to both parties. It seems to have been fairly and thoroughly tried, each party producing all the relevant testimony which it could obtain by the utmost diligence and research. We find no sufficient cause for doubting the substantial accuracy of the verdict which was rendered by the jury, or for believing that a more just result would be obtained by another trial. It would have been a misfortune, we think, if an error had crept into the record of such importance as to require a reversal of the judgment, but we are satisfied that no such error was committed. The judgment below is therefore affirmed.