## OLSON v. UNITED STATES.

(Circuit Court of Appeals, Eighth Circuit. November 23, 1904.)

No. 2,074.

1. CRIMINAL LAW—CONSOLIDATION OF INDICTMENTS.

Indictments against the same person for conspiracy to defraud the United States by means of illegal entries of public lands by different persons are for the same class of offenses and may properly be consolidated for trial, under Rev. St. § 1024 [U. S. Comp. St. 1901, p. 720].

2. PUBLIC LANDS—LEGALITY OF ENTRY UNDER TIMBER AND STONE ACT.

Any citizen of the United States may purchase lands under Timber and Stone Act June 8, 1878, c. 151, 20 Stat. 89 [U. S. Comp. St. 1901, p. 1545], where such purchase is for his own exclusive use and benefit. notwithstanding at the time of such purchase he may have in contemplation a future sale for a profit; but any previous agreement by him, by which directly or indirectly "the title which he might acquire from the government of the United States should inure, in whole or in part, to the benefit of any person except himself," is in violation of the act, and his verified statement to the contrary constitutes a criminal offense thereunder, although such agreement may have been in parol and within the statute of frauds.

3. CONSPIRACY—EVIDENCE—RELATED TRANSACTIONS.

Under an indictment charging the defendants with conspiracy to defraud the United States of a large quantity of public lands, the overt act charged being the causing of an illegal entry of a tract described by a person named for their benefit, evidence tending to show that defendants induced the entry of other tracts by different persons at the same time and under similar circumstances is competent, in proof of the conspiracy and the fraudulent motive; and hence, where such indictment was consolidated with others covering such other entries, the dismissal of the latter after the evidence had been taken thereon was not prejudicial to the defendants.

4. SAME—VARIANCE—IMMATERIAL AVERMENT IN INDICTMENT.

Under an indictment against a number of defendants for conspiracy to defraud the government out of certain public lands, charged to have been illegally entered for the benefit of the defendants, it is not a fatal variance that the proof shows that some of them only shared in the benefit; the offense being complete if the conspiracy is established and an overt act committed in pursuance thereof.

5. CRIMINAL LAW—EVIDENCE.

On the trial of an indictment for conspiracy to defraud the government by procuring other persons to make entries of public lands under the timber and stone act for the benefit of defendants, the intent and motive of such entrymen in making the entries is the material question in issue; and where they are placed on the stand by the prosecution, and testify to facts and circumstances from which it is sought to infer an illegal purpose and agreement, it is competent for the defendants, on cross-examination, to question them directly as to the purpose with which the entries were made, and as to whether they had made any contracts to sell or convey the lands to others.

6. SAME.

Where circumstantial evidence is relied on to show that entries of lands under the timber and stone act were fraudulent, and made for the benefit of others than the entrymen, to whom the timber on the lands was subsequently conveyed for a consideration shown, it is competent for either party to show the value of such timber, as a circumstance bearing upon the bona fides of the transaction.

In Error to the District Court of the United States for the District of Minnesota.

133 F.—54

J. L. Washburn and C. A. Severance, for plaintiff in error.
Charles C. Houpt, U. S. Atty.

Before SANBORN and HOOK, Circuit Judges, and MUNGER, District Judge.

MUNGER, District Judge. To undertake to present sufficient of the testimony in this case to determine what proper inferences might be drawn therefrom would require practically a statement of the entire evidence. The following synopsis, however, will be sufficient to indicate the character of the case and the application of the questions of law which are presented:

The testimony discloses that the plaintiff in error was by profession what is known and designated as a "timber cruiser"; that in June, 1901, he asked several parties if they wished to make $50. Being inquired of as to how it could be done, he told them by taking a claim under the stone and timber act, explaining somewhat to the parties the provisions of the act. On being informed that the parties had no money for expenses, he said that would be arranged for. At his suggestion these parties informed other persons, who called upon Olson to know if they, also, could take lands under the same conditions. This resulted in Olson taking about 25 persons from Duluth by rail to the station or town of Ely, from there by stage to Winton, from there by tugboat and rowboats or canoes up the shores of the lake to a certain point, where they disembarked and went but a few hundred feet back from the shore of the lake into the timber. After remaining there a few hours, they returned to Duluth by the same route. None of the entrymen paid any of the expenses of the trip, consisting of railroad, stage fare, hotel bill, etc. The testimony does not specifically show who paid the expenses, but the fair inference from the testimony is that they were paid by the defendant, Olson. They were all informed by Olson that they could make $50 by taking a piece of land under the stone and timber act, but were also informed by him that under the law they could not offer to sell it until after they had made final proof. Upon their return Olson notified the parties to go to the office of A. L. Agatin to arrange for filing upon the land. The parties, at various dates between June 24th and July 2d, met Olson at the office of Agatin, and from there went to the land office and made their filing upon lands, the description of which they did not personally know, but which was furnished them by Olson at Agatin's office. Nothing seems to have been said to any of the parties about the publication of any notice of their application, but such publications were prepared and made by A. L. Agatin for the respective parties without any suggestion from the parties that he should do so, and we think the evidence fairly discloses that the parties had no knowledge that any such publications were made until the time of making their final proofs. Afterwards, and between the 20th and 25th of September, the several parties made their final proofs at the land office, but before making their proofs they received notice through Olson to go to the office of Agatin for that purpose. Upon going to Mr. Agatin's office they were in-

formed by him that certain questions would be asked them at the land office, and that under the law the questions would have to be answered in a certain manner. Each one was then requested to give a mortgage upon their respective tracts of land to cover the amount required to be paid to the government and the expenses incurred. Said mortgages amounted each to approximately $450, varying in amount according to the number of acres and the sum paid to the government. These mortgages were made to the defendant Ross L. Mahon. The parties went to the land office and made their proofs, Mr. Olson acting as a witness for many of them. None of the entrymen expended any money of their own, and when one step in the transaction was taken they apparently did not know what the next step would be, until notified by Olson. After the proofs were made Olson was asked by most of the parties how about their $50, and were informed by him that that would be attended to or arranged in a few days. Between September 21st and 30th, inclusive, each of the parties, at the instance of Olson, executed a deed to the defendant George C. Swallow for all the timber upon their respective tracts of land; the consideration in each of said deeds, with the exception of five, being stated as the sum of $500, and each of the parties receiving therefor the sum of $50. Of the parties who thus entered land were Ella Phillips, Albert B. King, and Eugene N. Dwello. At the May term, 1903, of the United States District Court for the District of Minnesota, sitting at Duluth, the grand jurors presented an indictment against said Olson, Ross L. Mahon, Arcadius L. Agatin, Lewis W. Hopkins, and George C. Swallow, charging them with the crime of conspiracy to defraud the United States out of the title and possession of large tracts of land situated in the county of Lake and state of Minnesota, of great value, specifically describing one tract of land, and that in pursuance of said conspiracy they caused said Ella Phillips to enter the said tract at the United States land office, under the stone and timber act, not for her own use, but for the use and benefit of said Olson, Mahon, Agatin, Hopkins, and Swallow, said indictment being No. 3,189; and at the October term, 1903, of said court, the grand jurors presented two other indictments against defendants for like offenses, one based upon the entry of said King, known as "Indictment No. 3,254," and the other upon the entry of said Dwello, known as "Indictment No. 3,253." In December, at a sitting of the court, a separate trial was granted to the defendant Olson, and the court, upon application of the United States Attorney, consolidated the three indictments for the purposes of the trial, to which the defendant objected. At the close of the evidence indictments 3,189 and 3,254 were dismissed, on motion of the United States Attorney. The trial resulted in a verdict of guilty. Motions in arrest of judgment and for a new trial were made and overruled, and judgment of sentence pronounced, to reverse which judgment he has brought the case to this court. As there are only 365 assignments of error, they may for convenience be grouped together and all properly considered under a few heads.

We think the three indictments were properly consolidated for

the purpose of the trial. Whether they arose out of the same transaction, it is unnecessary to state. They were of the same class of crimes and offenses, and might have all been joined in one indictment in separate counts thereof. Rev. St. § 1024 [U. S. Comp. St. 1901, p. 720]; U. S. v. O'Callahan, 6 McLean, 596, Fed. Cas. No. 15,910; United States v. Devlin, 6 Blatchf. 71, Fed. Cas. No. 14,953; Pointer v. United States, 151 U. S. 396, 400, 14 Sup. Ct. 410, 38 L. Ed. 208; Williams v. United States, 168 U. S. 382, 390, 18 Sup. Ct. 92, 42 L. Ed. 509. Where several indictments are presented, embracing offenses which might have been joined in one indictment, they may be consolidated for the purpose of trial. Rev. St., § 1024; Williams v. U. S., supra. As the indictments charge a conspiracy to defraud the United States out of the lands in question in violation of Stone and Timber Act June 3, 1878, c. 151, 20 Stat. 89 [U. S. Comp. St. 1901, p. 1545], it becomes necessary before passing upon some of the questions urged against the sufficiency of the indictment, to consider the correct meaning and interpretation of said act. The act provides that any citizen of the United States may purchase, under certain conditions, lands of the United States which are valuable chiefly for stone or timber and are unfit for cultivation, to an amount not exceeding 160 acres. One of the conditions of such purchase is that the party seeking to make such purchase shall—

"File with the register of the proper district a written statement in duplicate, one of which is to be transmitted to the General Land Office, designating by legal subdivisions the particular tract of land he desires to purchase, setting forth that the same is unfit for cultivation, and chiefly valuable for its timber or stone; that it is uninhabited; * * * that deponent has made no other application under this act; that he does not apply to purchase the same on speculation, but in good faith, to appropriate it to his own exclusive use and benefit; and that he has not, directly or indirectly, made any agreement or contract in any way or manner with any person or persons whatsoever, by which the title which he might acquire from the government of the United States should inure, in whole or in part, to the benefit of any person except himself; which statement must be verified by the oath of the applicant before the register or receiver of the land office within the district where the land is situated."

The provisions of this statute were before the Supreme Court, and considered in United States v. Budd, 144 U. S. 154, 12 Sup. Ct. 575, 36 L. Ed. 384, and by this court in United States v. D. T. & L. Co. (C. C. A.) 131 Fed. 668. In the first case the Supreme Court held that the statute did not "limit the dominion which the purchaser has over the land after its purchase from the government or restrict in the slightest his power of alienation"; that the statute only prohibited his entering the land under an agreement whereby he was acting for another; that he might make a valid entry of such lands, though with a view of disposing of the same after he had completed the purchase, provided that at and before the time of such purchase he had not entered into an agreement with another, whereby such other should receive any of the benefit of such purchase. In United States v. D. T. & L. Co., this court held that what the statute prohibited was not alone a prior agreement that the title, or any part thereof, which the purchaser should ac-

quire, should be conveyed to another, but that the land should not be acquired on speculation for the use and benefit of another. In the light of these decisions, as well as a sensible construction of the statute, we have no hesitancy in holding its true meaning to be that any citizen of the United States may purchase lands as therein provided, where such purchase is for his own exclusive use and benefit, notwithstanding at the time of such purchase he may have in contemplation a future sale for a profit; that what the statute denounces is that a party shall not, at the time of the purchase, have directly or indirectly made any agreement or contract in any way or manner, with any person or persons, by which the title which he may acquire shall inure, in whole or in part, to the benefit of any person except himself; that the application for the land must be made in good faith for his own exclusive use and benefit, and not as the agent or hireling of another to obtain the land for some one besides himself. This view of the meaning of the statute forbids sustaining the contention of counsel for plaintiff in error that there can be no violation of the act unless an enforceable agreement was made by the applicant before his application to enter the land whereby the title should inure to the benefit of another. To hold that the provisions of the statute that the applicant shall not have in any way or manner, directly or indirectly, made any agreement or contract whereby the title which he may acquire shall inure to the benefit of any one except himself, contemplates an agreement or contract in writing good under the statute of frauds, would be to destroy the prohibitive conditions mentioned, and render ineffectual the object and purpose of the statute.

It is urged that the indictments were insufficient, in that they do not set forth facts sufficient to constitute a public offense. Much of the argument in support of this proposition is based upon the theory that the indictment should show an enforceable agreement, one good under the statute of frauds. This question we have already disposed of against such contention. In every other respect we think the indictment upon which defendant was convicted unassailable. It charges the several defendants with having entered into a conspiracy. To do what? To defraud the United States out of the title and possession of a large quantity of lands in the district of Minnesota, a portion of which are specifically described. How was this fraud to be consummated? The indictment says by means of false, fraudulent, feigned, untrue, and illegal entries of said lands under that certain act of Congress approved June 3, 1878, etc. The indictment then charges the overt act, to wit, that Olson, Mahon, and Agatin persuaded and induced Dwello upon entering the land, in the United States Land Office at Duluth, Minn., to make a false oath, etc., specifying the particulars in which the oath was false. Thus it will be seen the indictment charges the unlawful combination, the illegal purpose to be attained, the means by which it was to be attained, and the overt act upon the part of some of the alleged conspirators. This, we think, sufficient. Dealy v. United States, 152 U. S. 539, 14 Sup. Ct. 680, 38 L. Ed. 545.

We see no objections to the validity of the indictments which were dismissed; but, even though they were invalid, no prejudice resulted, as all the evidence received was admissible under the indictment upon which the conviction was had. The charge was conspiracy to defraud the United States out of a large tract of land. A portion of the lands were embraced in each indictment, and in the trial of either case evidence which tended to establish other related acts of the same character, done at or about the same time, were admissible as tending to establish the motive and intent of the defendants. In Wood v. United States, 16 Pet. 342–360, 10 L. Ed. 987, it was said:

"Fraud, being essentially a matter of motive and intention, is often deducible only from a great variety of circumstances, no one of which is absolutely decisive, but all combined together may become almost irresistible as to the true nature and character of the transaction in controversy. The case of Irving v. Motley, 7 Bing. 513, turned upon this very point. There the action was trover to recover back goods which had been purchased by an agent for his principal by means of a fraud. In order to establish the plaintiff's case it became necessary to show that other purchases had been made by the same agent for the same principal, under circumstances strongly presumptive of a like character. No doubt was entertained by the court of the admissibility of the evidence."

To the same effect are Castle v. Bullard, 23 How. 172, 16 L. Ed. 424; Lincoln v. Claflin, 7 Wall. 132, 19 L. Ed. 106; Butler v. Watkins, 13 Wall. 456–464, 20 L. Ed. 629; N. Y. Mut. Life Ins. Co. v. Armstrong, 117 U. S. 591, 6 Sup. Ct. 877, 29 L. Ed. 997; Continental Ins. Co. of N. Y. v. Ins. Co. of Penn., 51 Fed. 884, 2 C. C. A 535; American Surety Co. v. Pauly, 72 Fed. 470, 18 C. C. A. 644.

It is assigned as error that the court erred in not directing the jury to find a verdict of not guilty at the close of the testimony, as requested by defendant. There was in our judgment sufficient evidence to warrant the jury in finding that Olson and some of his codefendants did enter into the conspiracy charged to defraud the United States out of the lands in question by means of the false entries described. The evidence, it is true, was circumstantial; but it is rarely that a conspiracy or fraud can be established by direct and positive evidence. It is usually shown by a series of acts and circumstances. It would extend this opinion to an unnecessary length to undertake to recapitulate in detail the evidence which we think justified the jury in finding the existence of the conspiracy with the intent to defraud. It is sufficient to say that we have carefully read all of the evidence, and we are satisfied that the evidence justified such a finding.

It is said, however, that as the indictment charged that the land was entered for the benefit of all of the defendants named, and that, giving the evidence the most favorable construction, it failed to show that all of the defendants were to participate in the benefit of the entries, but that a portion only of the defendants were to receive the benefit, the variance is a fatal one. We do not agree to this proposition. The essence of the offense was the unlawful conspiracy for the purpose of defrauding the United States out of certain lands. The particular persons who were to be bene-

fited by the conspiracy and fraud was not a material issue. It was sufficient to establish the existence of the conspiracy for the purpose of defrauding the United States as alleged, and one of the overt acts alleged in furtherance of the conspiracy. It was not necessary to establish each and every overt act alleged, nor was it material or necessary to show that all of the persons alleged to be benefited by the conspiracy were to or did receive such benefit. Indeed, the offense is a completed one when the conspiracy is established, and an overt act committed in pursuance of that conspiracy, notwithstanding the ultimate object may not be accomplished. The authorities cited by counsel to the effect that the charge in an indictment for larceny that the property was that of A., the proof showing that it was the property of B., is a fatal variance, have no application. In this case the charge was that the parties entered into a conspiracy to defraud the United States out of certain of its lands. Had the proof been that the land belonged to some individual or to some government other than the United States, then the authorities cited would be applicable, and the variance would be fatal. It was sufficient in this case to simply show the unlawful combination to defraud the United States out of its lands, and the overt act by procuring the entrymen to file the false oath in the land office, that the entry was not bona fide for their own use and benefit, but for the use and benefit of some of the persons named in the indictment, but the fact that the entry was not for the benefit of all of them does not constitute a fatal variance; and in this case we think the jury was justified, under the evidence, in finding that the entry was made not for the sole use and benefit of the entrymen, but for the use and benefit of some, at least, of the defendants.

Indictment No. 3,189 was based upon the entry of Ella Phillips. She was called by the government as a witness, and examined in detail relative to the transaction. Upon cross-examination she was asked the following questions:

"Q. I want to know whether what you did in the taking of that claim, whether you did it for the purpose of making what you did out of it yourself, for yourself, for your own benefit?"

"Q. Did you take this claim, Miss Phillips, for the purpose of selling it when you saw fit, to sell it for what you could get out of it?"

"Q. Had you, prior to taking this claim, promised anybody to convey it to them or to deed it to them?"

"Q. Had you made any contract to sign any paper, or agreed in any manner before you took this claim, before you proved up on this claim, to sell it to anybody else?"

"Q. Or to sell any interest in it, or the timber thereon?"

"Q. Was any other person interested in any way with you in the taking of this claim?"

Objections to each of these questions were sustained by the court, to which counsel for defendant excepted.

Indictment No. 3,254 was founded upon the entry of Albert B. King, who was examined in detail as a witness by the government relative to the transactions, and upon cross-examination he was asked the question:

"Q. Had you made any contract or agreement by which the title you were to acquire from the government should inure to the benefit of any other person than yourself?"

This was objected to as immaterial, incompetent, and not proper cross-examination. The objection was sustained, to which defendant excepted.

Questions of like character were asked upon cross-examination of the parties whose entries were claimed to have been fraudulent, and who were called as witnesses by the government, and objections sustained thereto, to which exception was duly taken by defendant. We think that in sustaining the objections to these questions the trial court committed an error. The indictment was based and the trial had upon the theory that these entries were not made in good faith by the several entryment for their own use, but were made for the use and benefit of one or all of the defendants. A large amount of testimony was introduced for that purpose; in other words, it was sought to establish that the various entrymen, at the time they made their entries at the land office, did not intend the purchase to be for their own use and benefit, but as the agent or hireling of the defendants, for the use and benefit of the defendants, or some of them. We have before said that it was not necessary for the government to establish any express agreement that the entry was made for some one other than the entryman, but that it was competent to show that the motive and intent of the party making the entry was that it was for the use and benefit of another; that the question for the jury to determine was, what was the purpose, intent, and motive of the parties when they made the entry? That being so, it follows that the intent and motive of the party was the subject of inquiry; and the law we think to be that, whenever the motive, belief, or intention of the person is a material fact to be proved under the issue, it is competent to prove what such motive, belief, or intention was by the direct testimony of such person, whether he happens to be a party to the action or not. Berkey v. Judd, 22 Minn. 287; Garrett v. Mannheimer, 24 Minn. 193; Gardom v. Woodward, 44 Kan. 758, 25 Pac. 199, 21 Am. St. Rep. 310; Frost v. Rosecrans, 66 Iowa, 405, 23 N. W. 895; Bradner on Evidence, 390. The testimony of such party as to his intent and motive is not conclusive, but is competent. We do not wish to be understood as saying that, had the government shown a specific, express agreement between the entrymen and the defendants that in consideration of a given sum they would enter the land and then convey to the defendants, such testimony would be admissible. It is unnecessary to now pass upon such a case. What we do decide is that, where it is sought to show by a chain of circumstances that a party in doing an act was actuated by an illegal purpose and motive, it is competent for the party to testify directly that he had no such purpose or motive; and also, where it is sought to show by a chain of connected acts and circumstances that an agreement existed, an agreement requiring the concurrence of minds, that it is competent for a party to such alleged agreement to testify directly that no such agreement existed.

Defendant offered evidence to show the value of the timber upon the land in question. This was objected to as incompetent and imma-

terial, and the objection sustained. While it is true that, if the evidence established the existence of the conspiracy and the overt act as alleged, it would be immaterial what the value of the timber was, yet we think its value competent evidence to be considered in connection with all the other facts and circumstances as bearing upon the question whether or not the entry was made in good faith or for the use and benefit of another. We think it would have been competent for the government to have shown, had it been a fact, that the timber upon each tract was worth, say $1,500, and that the same was sold for $500, as bearing upon the question whether the entry was made pursuant to a prior arrangement or agreement that it should be for the benefit of the purchaser. In all cases involving the fraudulent transfer of property we understand the law to be that inadequacy of consideration is a circumstance to be considered in determining the bona fides of the transaction; and if it would be competent for the government to show inadequacy of consideration as a circumstance bearing upon the good faith of the transaction, we see no reason why it was not competent for the defendant to show that full consideration was paid, as bearing upon the bona fides of the transaction. We adhere to the rule announced in Golden Reward Min. Co. v. Buxton Min. Co., 97 Fed. 413, 38 C. C. A. 228, wherein it was announced by this court:

"That testimony which does have some tendency to establish a material fact may be rejected by a trial judge, and should be rejected when its admission will have a tendency to divert the attention of the jury from the precise issues involved in the case and protract the trial beyond reasonable limits."

We do not think, however, that the qualification of the general rule there announced applicable to this case, as it does not appear that this question of value would have necessarily protracted the trial or had a tendency to divert the attention of the jury from the real question; and, as we think the question of value a proper circumstance to be considered in determining the good faith of the transaction, the testimony should have been admitted. There is, however, another reason why this testimony should not have been excluded. The government gave in evidence the affidavits of the various parties, when filing papers in the land office, showing the value of the timber upon each quarter section to be from $700 to $800. True it is that this was not offered by the government for the purpose of showing the value, yet the value thus stated was before the jury, and we cannot say that it did not have some influence, when considering the other evidence in the case, in determining the good faith and bona fides of the various entries. Where the government gives in evidence the declaration of a party upon a material matter, we think it competent for the party to show what the real fact is in respect thereof.

Numerous objections are made to the charge of the court to the jury. Some of the paragraphs in the charge, when considered alone, might be subject to criticism; but, taken, as a whole, we think the charge was a clear and comprehensive statement of the case, and pronounced the law correctly.

Complaint is made to the refusal to give certain instructions requested. We think they were sufficiently covered by the general

charge, and that it was not error to refuse to give them in the language of counsel.

For the reasons stated, the judgment is reversed, and a new trial granted.