## UNITED STATES v. BRACE.

(District Court, N. D. California. January 16, 1907.)

(No. 4,353.)

1. PERJURY—PUBLIC LANDS—ENTRY—OATH—AUTHORITY TO ADMINISTER.

Act Cong. June 3, 1878, c. 151, 20 Stat. 89 [U. S. Comp. St. 1901, p. 1545], providing for the sale of public lands, restricts the quantity to 160 acres to any one person, and section 2 requires the applicant to file with the register a written statement under oath that he does not apply to purchase the land on speculation, but in good faith to appropriate it to his exclusive use, and that he has not made any agreement or contract to convey the same. Section 3, 20 Stat. 90 [U. S. Comp. St. 1901, p. 1545], provides that if no adverse claim shall be filed after publication of notice of the application, the applicant, on furnishing the register of the land

office satisfactory evidence of the publication of the notice, that the land is unoccupied, and apparently contains no deposits of gold, etc., and on paying the purchase money and fees, shall be entitled to a patent. The act also authorizes the Commissioner of the General Land Office to make regulations for the carrying of its provisions into effect, and one of the regulations so made requires the register of the land office to examine the applicant under oath with reference to the good faith of his application. *Held,* that section 3 did not preclude the land officers from requiring proof of the good faith of the application as a part of the applicant's final proof, and that the register of the land office had express power to administer an oath to the applicant on such examination, as provided by Rev. St. § 2246 [U. S. Comp. St. 1901, p. 1371], the falsity of which could be the basis of a prosecution for perjury.

2. PUBLIC LANDS—TIMBER LANDS—SALE—APPLICATION—TRUTH OF FACTS.

Act Cong. June 3, 1878, c. 151, 20 Stat. 89 [U. S. Comp. St. 1901, p. 1545], provides for the sale of public timber lands on an application under oath, stating, among other things, that the application is made for the sole benefit of the applicant, and not for the purposes of speculation or sale, and that on subsequent proof of the publication of notice and certain other facts, and payment of the purchase price and fees, a patent shall issue to the applicant. *Held,* that the facts stated in an application, including the fact that the application is not made for the purpose of sale, must not only be true when made, but must also be true when the land is paid for and the applicant receives his certificate of purchase or receiver's receipt.

3. PERJURY—SUBORNATION OF PERJURY—PUBLIC LAND—AFFIDAVIT.

Rev. St. §§ 5392, 5393 [U. S. Comp. St. 1901, pp. 3653, 3654], declares that every person who, having taken an oath before a competent officer. in any case in which a law of the United States authorizes an oath to be administered, that he will testify truly, willfully and contrary to the oath states or subscribes any material matter which he does not believe to be true, is guilty of perjury, and every person who procures another to commit any perjury is guilty of subornation of perjury. *Held* that, where an indictment charged that defendant induced C. to make application for the purchase of timber lands, as authorized by Act Cong. June 3, 1878, c. 151, 20 Stat. 89 [U. S. Comp. St. 1901, p. 1545], and in the furtherance of such application to make a false oath at the time of final entry with reference to the good faith of the application, which the register of the land office was authorized to administer by Rev. St. § 2246 [U. S. Comp. St. 1901, p. 1371], and by the regulations of the land department, it sufficiently charged the offense of subornation of perjury.

A. P. Black, Asst. U. S. Atty.

J. H. G. Weaver, for defendant.

DE HAVEN, District Judge. Indictment for subornation of perjury. The indictment contains three counts, and the defendant has demurred thereto for uncertainty, and upon the broad ground that the matters alleged do not constitute a public offense, in this: "That the oath set out therein is extrajudicial, not authorized by law, and will not sustain an indictment for perjury or subornation of perjury." The first count, in addition to the usual technical averments required in an indictment for subornation of perjury, charges that defendant instigated and procured one Howard A. Cotrell to appear in person before the receiver of public moneys for the Eureka land district, upon the hearing of an application by said Cotrell then and there pending before the local land office of that district, to purchase a certain tract of land under the provisions of the act of June 3, 1878, entitled

"An act for the sale of timber lands in the states of California, Oregon and Nevada and in Washington Territory," and to "make and subscribe before the receiver an oath and affidavit" in which he knowingly, falsely, and corruptly deposed and swore, among other things, that he, "the said Howard A. Cotrell, had not directly or indirectly made any agreement or contract in any manner with any person by which the title to the said land, sought to be acquired from the government of the United States, * * * might inure, in whole or in part, to the benefit of any person except the said Howard A. Cotrell," and that such entry was made by him in good faith exclusively for his own use and benefit. Section 1 of the act of June 3, 1878 (chapter 151, 20 Stat. 89 [U. S. Comp. St. 1901, p. 1545]), provides that lands chiefly valuable for timber "may be sold to citizens of the United States, or persons who have declared their intention to become such, in quantities not exceeding one hundred and sixty acres to any one person or association of persons"; and by section 2 it is made necessary for the person desiring to avail himself of the provisions of the act, to file with the register of the proper district a "written statement" or application, setting forth certain facts showing the good faith of the applicant, and containing also a description of the land he desires to purchase. Section 3 of the act provides:

"That upon the filing of said statement as provided in the second section of this act, the register of the land office, shall post a notice of such application, embracing a description of the land by legal subdivisions, in his office, for a period of sixty days, and shall furnish the applicant a copy of the same for publication, at the expense of such applicant, in a newspaper published nearest the location of the premises, for a like period of time; and after the expiration of said sixty days, if no adverse claim shall have been filed, the person desiring to purchase shall furnish to the register of the land-office satisfactory evidence, first, that said notice of the application prepared by the register as aforesaid was duly published in a newspaper as herein required; secondly, that the land is of the character contemplated in this act, unoccupied and without improvements, other than those excepted, either mining or agricultural, and that it apparently contains no valuable deposits of gold, silver, cinnabar, copper, or coal; and upon payment to the proper officer of the purchase-money of said land, together with the fees of the register and the receiver, * * * the applicant may be permitted to enter said tract, and, on the transmission to the General Land Office of the papers and testimony in the case, a patent shall issue thereon. * * * Effect shall be given to the foregoing provisions of this act by regulations to be prescribed by the Commissioner of the General Land Office."

The indictment under consideration is sufficiently definite, and it, in effect, charges the defendant with having instigated and procured Cotrell to give willfully false testimony in relation to the bona fides of his application, upon the occasion of his making final proof in the local land office of his right to enter the land for which he had applied. It is insisted upon the part of the defendant that under the statute providing for the sale of timber lands, above referred to, the officers of the local land office were upon such final hearing without jurisdiction to inquire whether the entry was made in good faith for the exclusive use and benefit of the applicant, or whether he had directly or indirectly made any agreement to convey the land to another when he had acquired the title. In support of this contention it is said that,

by the terms of section 3 of this statute, if no adverse claim has been filed, the applicant is only required to furnish to the register of the land office satisfactory evidence, first, that the notice of his application has been duly published as required, and, second, that the land is of the character contemplated in the act, "unoccupied, and without improvements, other than those excepted, either mining or agricultural, and that it apparently contains no valuable deposits of gold, silver, cinnabar, copper, or coal"; that the statute expressly declares that upon proof of these facts, "and upon payment to the proper officer of the purchase-money of said land, together with the fees of the register and the receiver, * * * the applicant may be permitted to enter such tract, and, upon the transmission to the General Land Office of the testimony and evidence in the case, a patent shall issue thereon"; and it is urged that, the statute having thus named the facts which are to be proven at the time of final entry, it was not competent for the local land officers to require proof of other facts, such as the good faith of the applicant in making the entry. The answer to this argument is found in the general intent or policy of the statute, and the particular provision therein making it the duty of the Commissioner of the General Land Office to prescribe regulations for the purpose of carrying the law into effect, and in the regulations made in pursuance of the authority thus conferred. The obvious intention of the statute is to restrict the right to purchase the lands to which it refers to persons who in good faith enter the same for their own use and benefit. The applicant must not be a "dummy" or a mere nominal purchaser, who in making application to purchase simply allows his name to be used for the purpose of acquiring from the government the legal title to the land applied for, with the intention of immediately transferring such title to some other person under a direct or indirect agreement or understanding that such is the purpose for which the entry is made; nor must he apply "to purchase the same on speculation." Olson v. United States, 133 Fed. 849, 67 C. C. A. 21. That such was the intention of Congress not only appears from the fact that the quantity of land which any one person or association of persons is allowed to purchase under the statute is limited to 160 acres, but from section 2, which requires the applicant to file with the register of the proper land district, as the first or initial step in the proceeding, a statement, verified by his oath, setting forth "that he does not apply to purchase the same on speculation, but in good faith to appropriate" it "to his own exclusive use and benefit; and that he has not directly or indirectly made any agreement or contract, in any way or manner, with any person or persons whatsoever, by which the title he might acquire from the government of the United States should inure, in whole or in part, to the benefit of any person except himself." The administration of this law is confided to officers of the Land Department, whose duty it is to see that its policy is not defeated and the government defrauded by a sale of the public lands to those who purchase on speculation or for the benefit of others; and to the end that this duty may be properly discharged, the statute expressly confers upon the commissioner of the General Land Office authority to make regulations for the pur-

pose of carrying its provisions into effect, and, under the authority thus given, that officer, on May 21, 1887, in a circular addressed to registers and receivers, prescribed the following among other regulations, to be observed in the entry of lands under this statute:

"The evidence to be furnished to the satisfaction of the register and receiver at time of entry, as required by the 3d section of the act, must be taken before the register or receiver, and will consist of the testimony of claimant, corroborated by the testimony of two disinterested witnesses. The testimony will be reduced to writing by you upon the blanks provided for the purpose, after verbally propounding the questions set forth in the printed forms. You will test the accuracy of affiant's information and the bona fides of the entry, by close and sufficient oral examination. You will especially direct such examination to ascertain whether the entry is made in good faith for the appropriation of the land to the entryman's own use, and not for sale or speculation, and whether he has conveyed the land or his title thereto, or agreed to make any such conveyance, or whether he has directly or indirectly entered into any contract or agreement in any manner with any person or persons whomsoever by which the title that may be acquired by the entry shall inure, in whole or in part, to the benefit of any person or persons except himself." 6 Land Dec. Dep. Int. 116.

The printed forms referred to in the foregoing regulation, and made a part of it, require the officers of the local land office to propound to the applicant at the time of entering the land applied for the following among other questions:

"Ques. 13. Have you sold or transferred your claim to this land since making your sworn statement, or have you directly or indirectly made any agreement or contract, in any way or manner, with any person whomsoever, by which the title which you may acquire from the government of the United States may inure, in whole or in part, to the benefit of any person except yourself?

"Ques. 14. Do you make this entry in good faith for the appropriation of the land to your own use and not for the use or benefit of any other person?"

That these regulations are in prefect harmony with the statute, and such as are reasonably necessary and proper to be observed in its administration, cannot admit of doubt. The officers of the Land Department are not required to accept the statements contained in the application to purchase as conclusively establishing the bona fides of the applicant, but, on the contrary, the statute contemplates that the Commissioner of the General Land Office shall make regulations giving to the register and receiver the authority to subject the applicant and his witnesses to an oral examination, for the purpose of satisfying themselves that the entry is made in good faith for the benefit of the applicant, and not in the interest of another, and the questions above set out are relevant to such an inquiry. Even if it should be conceded that his right to purchase from the United States would not be defeated by a sale, or by an agreement to sell, made after the filing of the application and before the date of the entry—that is, before the applicant is given his certificate of purchase or receiver's receipt showing that he has paid the government for the land and been allowed to enter it—still the fact of such intermediate sale or agreement to sell would be a material circumstance to be considered in an investigation relating to the truth of the statements contained in the original application. But the statute cannot receive this narrow interpretation. The facts stated in the application must not only be true

when made, but it must also be true that when the land is paid for, and the certificate of purchase or receiver's receipt issued, that the person entering the land is not then under agreement, express or implied to convey the title so acquired to another person. U. S. v. Bai'ey, 17 Land Dec. Dep. Int. 468. This seems to be in accordance with what was said by the Supreme Court in United States v. Budd, 144 U. S. 163, 12 Sup. Ct. 575, 36 L. Ed. 384. The court there said:

"The act does not in any respect limit the dominion which the purchaser has over the land after its purchase from the government, or restrict in the slightest his power of alienation. All that it denounces is a prior agreement—the acting for another in the purchase. If when the title passes from the government no one save the purchaser has any claim upon it, or any contract or agreement for it, the act is satisfied."

To hold that one may, after filing his application, make an agreement to convey the land applied for, and still have the right to enter the same for the benefit of the person with whom the agreement was made, would defeat the express policy of the statute, which limits the quantity which may be acquired thereunder by any one person or association of persons to 160 acres. Such an entry, if not opposed to the strict letter of the statute, would be clearly in violation of its spirit. Inasmuch as the regulations of the Commissioner of the General Land Office above referred to are valid, the receiver of the local land office was authorized to administer the oath mentioned in the indictment. Section 2246 of the Revised Statutes [U. S. Comp. St. 1901, p. 1371] provides:

"The register or receiver is authorized, and it shall be their duty, to administer any oath required by law or the instructions of the General Land Office, in connection with the entry or purchase of any tract of the public lands. * * *"

It necessarily follows from the foregoing that the indictment sufficiently charges the defendant with the crime of subornation of perjury, under the rule declared in Caha v. United States, 152 U. S. 211, 14 Sup. Ct. 513, 38 L. Ed. 415, and as that offense is defined in sections 5392, 5393 of the Revised Statutes [U. S. Comp. St. 1901, pp. 3653, 3654], which declare that:

"Every person who having taken an oath before a competent tribunal, officer, or person, in any case in which a law of the United States authorizes an oath to be administered, that he will testify * * * truly * * * willfully and contrary to such oath states or subscribes any material matter which he does not believe to be true, is guilty of perjury. * * * Every person who procures another to commit any perjury is guilty of subornation of perjury."

The demurrer to the indictment is overruled.