## FULLER v. FLETCHER et al.

*(Circuit Court, D. Rhode Island. October 18, 1890.)*

1. EJECTMENT—EVIDENCE—ANCIENT RECORD.
      Where it is proved that land was conveyed to J. in 1768, and has been assessed to his heirs ever since 1805, the original tax-lists of the town for the intervening years are admissible in evidence to show that J. was assessed for said land during said years, where such lists show that J. was assessed for land in said town, though they do not identify the land.

2. SAME—PRESUMPTION OF DEED.
      Where the question is whether a deed is to be presumed from long possession and claim of title, evidence that the claim of the adverse claimant was notorious in the community, and that, more than 60 years after the deed, if there was a deed, was given, such claimant was too poor to sue, is irrelevant.

3. SAME—DEFENSES.
      The attempt by a defendant in ejectment to prove that the will under which the plaintiff claims is invalid does not prevent him, on a second trial of the cause, to set up the defense of a presumption of a deed to his grantor.

4. ADVERSE POSSESSION—PRESUMPTION OF DEED.
      There is no absolute bar against the presumption of a grant within a period short of the statute of limitations.

5. SAME—POSSESSION.
      Occasional interruptions of possession during the period necessary to create a title by adverse possession, which do not impair the use to which the occupant subjects the property, and for which it is chiefly valuable, will not necessarily defeat the presumption of a grant.

6. SAME—EVIDENCE.
      It is sufficient ground for the presumption of a grant to show that, by legal possibility, a grant might have issued, though the probability of its existence is not established.

7. SAME.
      The facts that defendants and those from whom they derive title have claimed the land for more than 100 years; that during that time they have paid taxes on it; that for a long period of time they exercised acts of ownership over it; and that for more than 20 years they have actually used the land,—are sufficient to justify the presumption of a deed.

8. NEW TRIAL—MISCONDUCT OF JURY.
      The fact that two of the jurors during the trial of a cause read the opinion of the supreme court, rendered on appeal from a former judgment of the cause, is not ground for a new trial, where it clearly appears that the opinion was not furnished by or at the instigation of the successful party, and that the opinion was not taken into the jury-room or laid before the jury.

9. SAME—AFFIDAVITS OF JURORS.
      Affidavits of jurors are admissible, on motion for new trial, to prove, in support of the verdict, that a certain paper was not laid before the jury or read by them.

At Law. On motion for new trial.
*Jas. C. Collins, Livingston Scott,* and *Elisha C. Moury,* for plaintiff.
*James Tillinghast* and *Wm. H. Greene,* for defendants.
Before GRAY, Justice, and COLT, J.

GRAY, Justice. This was an action of ejectment, brought by Nathan Fuller, in his own right and as trustee, to recover 27 undivided 28 parts of a lot of land, containing about 14 acres, and situated in the town of Lincoln, formerly Smithfield, in the state of Rhode Island. The defendants pleaded the general issue and 20 years' possession under the statute of possessions of Rhode Island, and upon these pleas issues were joined. Both parties claimed title under Francis Richardson, who acquired a tract of land, including the lot in dispute, in 1750, died in

1756, and by a codicil to his will devised the land to his daughter, Abigail Fuller, wife of Ezekiel Fuller, of whom the plaintiff and his *cestuis que trust* were descendants, and in whose right they claim. In 1768 Jeremiah Richardson, a grandson of Francis Richardson, conveyed the land to Stephen Jencks, the ancestor of the defendants, and in whose right they claim. A principal question in the case was whether Jeremiah Richardson, at the time of that conveyance, was entitled to the land either by a lost grant or by inheritance. The case has been tried five times. Verdicts returned for the defendants at the first trial, and for the plaintiff at the second trial, were set aside by this court. A verdict returned for the plaintiff at the third trial was set aside by the supreme court on writ of error. 120 U. S. 534.[1] The fourth trial resulted in a disagreement of the jury. At the fifth trial, at November term, 1887, a verdict was returned for the defendants, and a bill of exceptions was tendered by the plaintiff and allowed by the presiding judge. The plaintiff filed a motion to set aside this verdict, and to order a new trial, which, so far as concerns the proceedings at the trial, has been submitted and argued upon the case as stated in the bill of exceptions. The evidence at the last trial was mostly the same as that introduced at the third trial, the substance of which is stated in the judgment of the supreme court, reported in 120 U. S. 534.[1] A recapitulation of much of the evidence is therefore unnecessary.

The court, against the plaintiff's objection, and for the purpose of showing that Stephen Jencks was assessed for and paid taxes on this land from 1770 to his death, in 1805, admitted in evidence original tax-lists of the town (being all before 1805 that the legal custodian thereof, as he testified, was able to find) for the years 1770 and 1805, and 21 of the 34 intervening years, each of which contained the name of Stephen Jencks as a person taxed, with the amount of his tax, and generally the word "land," opposite to it; as well as a list of the polls and estates, real and personal, of the proprietors and inhabitants of the town, called an estimate for taxation, for the year 1778, (being the only list found during the same period,) by which it appeared that he was listed for 32 acres designated as wood and waste land, and also for 2 acres of tillage and 10 acres of pasture land. It being in dispute whether Jencks had so much land in the town other than the land in question, the plaintiff contends that all these lists were erroneously admitted, because they did not identify this land. But the names of the Fullers did not appear upon the lists, and there was no evidence that they were taxed in the town during the period in question; and it was proved that this land had been conveyed to Jencks in 1768, and has been assessed to his heirs ever since 1805. These ancient records, therefore, were rightly submitted to the consideration of the jury. *Fletcher* v. *Fuller*, 120 U. S. 552, 7 Sup. Ct. Rep. 667; *Com.* v. *Heffron*, 102 Mass. 148, 152, 153.

Upon the question of presuming a deed to Jeremiah Richardson before 1768, the plaintiff offered evidence of the poverty of himself and his

[1] 7 Sup. Ct. Rep. 667.

*cestuis que trust*, and of those claiming under the same title, by way of showing their inability to sue.  The court, after liberally admitting such evidence down to the death of Abigail Fuller, in 1834, rightly excluded like evidence since that time, as too remote and irrelevant to have any bearing upon the question of presuming a grant more than 60 years before.  The testimony offered by the plaintiff to prove "the notoriety of the claim of the plaintiff, and of those under whom he claims, of the land in dispute, in and throughout the community where the land lay, extending over a period from 1822 to the present time," was equally irrelevant, even if (which we do not intimate) it would, under any circumstances, be competent.  The attempts of the defendants at the former trials to prove that the will of Francis Richardson was inoperative, for want of having been proved or recorded in Rhode Island, to pass title to his daughter, Abigail Fuller, and consequently that Jeremiah Richardson took by inheritance, had no tendency to defeat the independent defense of a presumption of a deed to Richardson.

No error is shown in the refusal to charge that—

"If the jury find that Abigail Fuller, wife of Ezekiel Fuller, entered into possession under the devise in the will of Francis Richardson, then there is no sufficient evidence in the case to show an actual adverse and exclusive possession by any person under whom the defendants claim prior to the year 1800."

The bill of exceptions does not profess to state all the evidence introduced upon this point, or contain anything to restrict the application of the general rule that the sufficiency of evidence is a question for the jury.

Objection is taken to the refusal of the court to instruct the jury—

"That if they should find that the defendants, or those under whom they claimed, had had twenty years' uninterrupted adverse and exclusive possession of the premises, during which time the plaintiff, or those under whom he claimed, had been free from legal disabilities, they were justified in presuming a grant; but otherwise they must decide according to whether the evidence did or did not lead to the reasonable belief in the rightful origin of the defendants' possession, or of those under whom they claim."

But such an instruction would be entirely inconsistent with the opinion of the supreme court, in which it was distinctly affirmed that, when the other circumstances are very cogent and full, there is no absolute bar against the presumption of a grant within a period short of the statute of limitations; and also that when a proprietary right has long been exercised, although the exclusive possession of the whole property to which the right is asserted may have been occasionally interrupted, yet if the actual possession has been accompanied by other open acts of ownership, and the interruptions did not impair the uses to which the possessor subjected the property, and for which it was chiefly valuable, they should not necessarily be held to defeat the presumption of the rightful origin of his claim, to which the facts would otherwise lead. 120 U. S. 550, 552, 7 Sup. Ct. Rep. 667.

The instruction requested, "that if the jury should find that Jeremiah Richardson made the deed to Stephen Jencks in 1768, claiming to own

the land, not under a conveyance from Abigail Fuller, but by inheritance from his grandfather, Francis Richardson, then no presumption of a grant could arise," was rightly refused, if for no other reason, because it would have withdrawn from the consideration of the jury the evidence of the defendants' possession since 1768.

The instructions given upon the return of the jury into court for further instructions were as follows:

"With respect to the presumption of a grant or deed, it does not rest upon the fact of whether these defendants prove a lost deed as a matter of fact; for the law says to you that it is your duty, if you find that these defendants, the Fletchers and the Dexters, have claimed this property for more than a hundred years, if they have paid taxes on it for a long period of time, if they have exercised acts of ownership over it, and if they have been in possession of it for more than twenty years, then it is your duty to presume a grant: provided, the rebutting evidence on that does not overcome it. The presumption of a grant does not arise from the proof of the fact that such a lost deed in fact existed, because then it would be a mere question of proof. A presumption rests upon the infirmity of human nature. It arises from the fact that evidence, owing to lapse of time, is lost; from the fact that the muniments or the deeds of title may be lost; from the fact that parties who are entitled to a valuable possession will claim it, provided others are enjoying it. Therefore the law says that you are warranted or justified in presuming a grant, whatever your belief may be of the fact of such grant, in order to quiet a long possession. So that this is the rule: It is not necessary, in order to presume a conveyance, to believe that the conveyance was in point of fact executed. It is sufficient if the evidence leads to the conclusion that a conveyance might have been executed, and that its existence would be a solution of the difficulties arising from its non-existence. It is not founded on a belief that a grant has actually been made in the particular case, but on the general presumption that a man will naturally enjoy what belongs to him, the difficulty of proof after lapse of time, and the policy of not disturbing long-continued possessions. It is not indispensable, in order to lay a proper foundation for the legal presumption of a grant, to establish the probability of the fact that a grant ever issued. It would be sufficient ground for a presumption to show that, by legal possibility, a grant might have issued. Though the presumption of a grant or deed is one that may be rebutted by proof of facts inconsistent with its supposed existence, yet where no such facts are shown, and the things done and the things omitted with regard to the property in controversy by the respective parties, for long periods of time after the execution of the supposed conveyance, can be explained satisfactorily only upon the hypothesis of its existence, it is the duty of the jury to presume a conveyance, and thus quiet the possession. If they find that the defendants or their ancestors in title have claimed the land for more than a century, that during that time they have paid taxes thereon, and for a long period of time exercised acts of ownership, suited to the condition of the property, and have actually used the property for twenty years or more, these things would justify you in presuming a deed from Abigail Fuller to Jeremiah Richardson, to quiet the possession of the defendants."

These instructions were "duly excepted to, so far as they relate to the right or duty of the jury to presume a grant upon the facts as developed in this case;" but they were in exact accordance with the judgment of the supreme court in 120 U. S. 534, 7 Sup. Ct. Rep. 667.

The objections urged against the instructions originally given to the

jury, so far as they are not covered by what has been already said, relate to single sentences in the charge, dealing with subordinate points, not affecting the real merits of the case or the substantial justice of the verdict. Such objections afford no ground for sustaining a motion for a new trial, which is addressed to the sound discretion of the court. *McLanahan* v. *Insurance Co.*, 1 Pet. 170, 183. Nor could they be drawn in question under the general exception "to the instructions which were given, as above set forth," at length in 10 printed pages of the record. *Insurance Co.* v. *Raddin,* 120 U. S. 183, 193, 194, 7 Sup. Ct. Rep. 500 *et seq.*

The remaining grounds assigned for the motion for a new trial are as follows:

"Because, during the trial of this cause at November term, 1887, one or more of the jurors impaneled to try the case were furnished, by parties unknown, without the knowledge or consent of the plaintiff, with a printed copy of the opinion of the supreme court of the United States delivered in this case [*Fletcher* v. *Fuller*] on writ of error at October term, 1886, which said printed opinion was read and examined by said juror or jurors during said trial, and before the close thereof. Because, two days before the commencement of the trial, one of the drawn jurors attending for the term, and who afterwards was accepted and sworn to try the said case, was furnished with a printed copy of said opinion by William H. Gooding, town-clerk of the town of Lincoln, a person pecuniarily interested in the defense of this suit, and said juror did, at said Gooding's request, read said opinion, and read the same during the said trial."

The depositions taken by a commissioner, appointed by the court with the consent of the parties, prove this state of facts: One of the defendants, before the last trial, caused to be printed 100 pamphlet copies of the opinion of the supreme court as reported in *Fletcher* v. *Fuller,* 120 U. S. 537–555, 7 Sup. Ct. Rep. 667, with no separate statement of facts or evidence prefixed, and with a cover entitled "Opinion of the Supreme Court of the United States, in favor of the defendants, Nathan Fuller, in his own right and as trustee, *vs.* Lucy W. Fletcher *et al.*, delivered March 7, 1887;" and distributed them among friends and relatives interested in the case, and among other persons in the neighborhood, including some who had been jurors or witnesses at former trials. Pending this trial, the foreman and another of the jury each read one of those copies, brought to his notice under the following circumstances: A copy was left, by whom did not appear, at the place of business of the foreman in Providence. Gooding, the town-clerk of Lincoln, and who held other land under the same title as the defendants, testified that two days before the last trial he called at the residence in Lincoln of another juror drawn and attending at that term, and afterwards sworn as a juror in this case, and gave him a copy, for the purpose of enabling him to understand the case better, and with no intent to influence his judgment. Gooding's conduct, though meddlesome and foolish, does not appear to have been dictated by a corrupt intent to interfere with the administration of justice, and there is not the slightest evidence that either of the defendants had a hand in

it.   On the contrary, it is clearly proved by the uncontradicted testimony of the defendants that none of them had anything to do with transmitting or delivering such copies to either of those jurors, or to any other juror who sat at this trial; and it is also proved by the testimony of both those jurors that no such copy was taken into the jury-room or laid before the jury.

In order to set aside a verdict because a paper was unlawfully communicated to the jury, it must, at least, appear either that the party in whose favor the verdict was afterwards returned took some part in the communication, or that the paper was such as could be supposed to have influenced the minds of the jury; and the affidavits of jurors, though incompetent to prove the part which any of them took, or the motives by which any of them were influenced, in their discussions with each other about the case, are admissible to disprove that a certain paper was before the jury or was read by them.   *Woodward* v. *Leavitt*, 107 Mass. 453, 466–469.   The copies in question having been communicated to the two jurors out of court, and without any participation of the defendants, the case stands just as if those jurors had happened, on the way to or from court during the trial, to read the opinion in a newspaper, or in the official reports of the supreme court; and there is no such presumption that they could have been unduly influenced by their separate reading of that opinion as will justify the setting aside of the verdict subsequently returned by the jury, after being fully instructed by the court upon the law applicable to the case.   *U. S.* v. *Reid,* 12 How. 361, 366.   Judgment on the verdict.