COLT v. UNITED STATES.†

(Circuit Court of Appeals, Eighth Circuit. September 1, 1911.)

No. 3,508.

**1. CRIMINAL LAW (§ 371*)—EVIDENCE—OTHER OFFENSES—INTENT.**

In a prosecution for using the United States mails in furtherance of a scheme to defraud, evidence of defendant's connection in various similar transactions in which the mails were used in furtherance of similar fraudulent schemes from December, 1904, nearly to the time of the transactions charged in the indictment, was admissible to show intent.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 830-832; Dec. Dig. § 371.*]

**2. CRIMINAL LAW (§ 822*)—TRIAL—INSTRUCTIONS.**

The correctness of a charge cannot be determined from excerpts taken therefrom and considered apart from other instructions bearing on the same subject.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 1990-1995; Dec. Dig. § 822.*]

**3. CRIMINAL LAW (§ 925½*)—NEW TRIAL—MISCONDUCT OF JURY.**

In a prosecution for using the mails in furtherance of a scheme to defraud, misconduct of one of the jurors in procuring from the bailiff a copy of the federal statutes while the jury were deliberating on a verdict was not ground for a new trial, where it did not appear that such misconduct influenced the verdict.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 2248-2253; Dec. Dig. § 925½.*]

In Error to the District Court of the United States for the Western District of Missouri.

Olcott C. Colt was convicted of using the mails in furtherance of a scheme to defraud, and he brings error. Affirmed.

Hugh Gordon Miller (True Page Pierce, on the brief), for plaintiff in error.

Leslie J. Lyons, U. S. Atty., and Thaddeus B. Landon, Asst. U. S. Atty., for the United States.

Before ADAMS and SMITH, Circuit Judges, and REED, District Judge.

REED, District Judge. The plaintiff in error, who will be called the defendant, was convicted of having used the United States mails in furtherance of a scheme to defraud, in violation of section 5480 of the Revised Statutes of the United States, as amended (U. S. Comp. St. 1901, p. 3696).

The third count of the indictment, upon which alone the defendant was convicted, charged the scheme as devised by him substantially as follows: That defendant should falsely pretend and represent that he was engaged in a general real estate brokerage and money lending business in New York City, with offices there, and also in the Gibralter Building in Kansas City, Mo., where he pretended to conduct such business under the names of G. Mortimer Gaugh, and W. W. Gaugh; that he had large sums of money of his own, and a large number of

clients in New York City and other Eastern cities who had large sums of money to loan upon real estate security in the various cities and states of the United States; that defendant advertised. in the daily papers throughout the United States offering to purchase mortgages, notes, bonds, and other securities, to incite persons who might read such advertisements to open correspondence with him through the United States mails, and, upon receiving communication from such persons, he would correspond with them through the mails to induce, and attempt to induce them to pay large sums of money for an expert opinion and report of appraisers, designated by him, as to the condition and value of the securities offered for sale; that defendant was not engaged bona fide in the real estate brokerage or money-lending business as represented and pretended by him; that he did not have money of his own or of others to loan, or with which to purchase such securities; that his pretensions and representations were false, and that he did not intend to purchase any of such securities as might be offered in response to such advertisements; that his purpose in so scheming and advertising was to incite those who might read such advertisements to open correspondence with him through the mails, that he might in that way get into communication with them to induce or attempt to induce them to pay large sums of money for obtaining an appraisal and report of the property upon which the securities offered for sale were secured, which money, when received, he would fraudulently appropriate and convert to his own use, without rendering, and without intending to render, any equivalent therefor to the persons from whom the same should be so obtained; that having so devised such scheme, and in attempting to execute the same, he did on a date named unlawfully deposit in the post office at Kansas City, Mo., a certain letter to be sent and delivered by the post office establishment of the United States, addressed to a firm named, which said letter is set out in the indictment.

The principal errors assigned as having occurred upon the trial are that the court erred (1) in admitting over defendant's objections, certain testimony; (2) in its instructions to the jury; (3) in overruling a general demurrer at the close of all the evidence; and (4) refusing to grant a motion for new trial in which misconduct of the jury is alleged.

[1] The testimony alleged to have been erroneously admitted is that which shows, or tends to show, that defendant in 1906 was conducting in the state of New York a business similar to that charged in the indictment, and that he was in the latter part of December, 1904, conducting a similar business in the name of William D. Clyde as general manager of the Investor's Brokerage Company of Indianapolis, Ind., and that in 1905 he was connected in some manner with the Imperial Trustee Company of Jersey City, N. J., which was conducting a somewhat similar business. The objection urged against the admission of this testimony is that it relates to collateral facts and tends to show the commission by defendant of crimes other than that charged in this indictment, that such transactions were too remote, and would operate to his prejudice. The testimony was admitted as bearing upon

the intent or motive and good faith of the defendant in the various transactions, and its consideration by the jury was expressly limited by the trial court to such purpose only.

Evidence of other offenses committed by the accused having no connection with or relation to that for which he is upon trial is not, of course, ordinarily admissible. But, when the offense charged is one that involves the fraudulent intent or motive of the accused, it is permissible in criminal as well as in civil cases to introduce evidence of other acts and transactions of the party upon trial of a kindred nature to show his intent or motive in the particular act directly under investigation, even though it may show the commission of other offenses than that for which he is being tried. Indeed, in no other way, in many cases, could the fraudulent intent or motive of the accused be established, for the single act under investigation might not alone be decisive either way; but when that act is considered in connection with other transactions of a like or similar character occurring at or near the same time, which also involve the intent or motive of the party, the intent and motive in doing the act under investigation may thus be made to appear with almost conclusive certainty. Wood v. United States, 16 Pet. 342–359, 10 L. Ed. 987; Moore v. United States, 150 U. S. 57–60, 61, 14 Sup. Ct. 26, 37 L. Ed. 996; Williamson v. United States, 207 U. S. 425–451, 28 Sup. Ct. 163, 52 L. Ed. 278; Thomas v. United States, 156 Fed. 897–911, 84 C. C. A. 477, 17 L. R. A. (N. S.) 720; Bryan v. United States, 133 Fed. 495–500, 66 C. C. A. 369; Olson v. United States, 133 Fed. 849–854, 67 C. C. A. 21; Commonwealth v. Jackson, 132 Mass. 16; People v. Harris, 136 N. Y. 423, 33 N. E. 65–74.

In Thomas v. United States, above, this court, speaking by Judge Adams, said upon this question:

"Nothing is better settled in the law of evidence in any case involving fraudulent intent than that other acts and dealings of the accused of a kindred character to those charged in the case in hand and performed at or about the same time are admissible to illustrate and establish the intent or motive in the particular act directly in judgment."

In Commonwealth v. Jackson, 132 Mass. 16, a case cited in behalf of the defendant, it is said:

"It is not in general competent to show a distinct crime committed by the defendant for the purpose of proving that he is guilty of the crime charged. But as in all crimes, except a few statutory offenses, a criminal intent is necessary to be proved, evidence which legitimately bears upon this may be put in, even if it be derived from circumstances which also show the commission of another offense."

The transactions of the defendant in the name of the Investor's Brokerage Company and those in his own name in New York as testified by the witnesses were similar to those charged in the indictment. Those in connection with the Imperial Trustee Company were somewhat different. As to those, the testimony tended to show that defendant had advertised through the press that he or his clients had money to invest in mortgages or other securities, and upon receipt through the mails of offers of such securities prompted by such advertisements he would, through the mails, refer the persons so offer-

ing to the Imperial Trustee Company, which proposed to guarantee the stocks or securities upon a percentage basis, one-half of which the defendant was to receive if the deals were consummated. The transactions were upon the same general plan as the others, and those for which the defendant was on trial, and, if they occurred as testified by the witnesses, they involved a like fraudulent intent upon the part of the defendant in the use of the United States mails. These various transactions continued from December, 1904, to the time or nearly to the time of those charged in the indictment, and were not, therefore, too remote to render them inadmissible upon that ground. Some of this testimony may not have been strictly relevant or very material, but in criminal as well as civil cases which involve questions of fraud, or fraudulent intent, great latitude is allowed in the investigation of the facts, and judgments will not be reversed because unimportant, and possible irrelevant testimony may have been admitted, when the record satisfies that no substantial prejudice did or could have resulted because thereof. Williamson v. United States, 207 U. S. 425–451, 28 Sup. Ct. 163, 52 L. Ed. 278. In admitting the testimony in question, the court restricted its consideration by the jury to the question of the intent and good faith of the defendant in the various transactions; and in its charge to the jury instructed them that they should consider it for that purpose alone. As so restricted, the defendant has no valid ground of complaint because of its admission.

Some other errors are assigned upon the admission of evidence; and one upon the overruling of a general demurrer at the conclusion of all the evidence. We have examined the record relating to them, and deem them to be without substantial merit.

The error in the charge of which complaint is made is that in speaking of the evidence of the transactions in Indianapolis the court said:

"And this was offered and received solely for the purpose of showing the intent of the defendant when engaged in the business at a former time."

This is but an excerpt from a paragraph of the charge to which no exception was taken, and the assignment of error based thereon might well be disregarded for this reason alone. Standing alone even, the excerpt does not seem to be objectionable.

[2] But the correctness of a charge is not to be determined upon excerpts taken therefrom, and considered apart from other portions bearing upon the same subject. The charge as a whole upon that question must be considered. So considered it cannot be successfully contended that the charge in question is erroneous.

[3] The misconduct of the jury after the cause was submitted to it is made a ground of a motion for new trial. It is shown by affidavits of the bailiff in charge of the jury that about 11 o'clock p. m., after the cause had been submitted to it, some member thereof rapped upon the door. The bailiff opened it and one of the jurors came into the hall, and said "the jury wanted a copy of the federal statutes." The bailiff procured a copy of the "federal statutes" and took it into the jury room, and placed it upon a table before them. In about an hour afterwards the jury agreed.

The granting or denial of a motion for new trial rests very largely

in the judicial discretion of the trial court, and it is not ordinarily reviewable upon writ of error. Newcomb v. Wood, 97 U. S. 581-583, 24 L. Ed. 1085; Mattox v. United States, 146 U. S. 140-146, 13 Sup. Ct. 50, 36 L. Ed. 917.

In Mattox v. United States, above, it was shown by affidavits that, after the cause was submitted to the jury, a paper printed and published in the city where the trial occurred, commenting on the trial and unfavorably upon the defendant, was introduced into the jury room, and was read by them. The court excluded the affidavits and the paper read by the jury, and refused to consider them. This was held sufficient to warrant a review, upon errors assigned, of the action of the trial court; and the misconduct to be such as to warrant a new trial. See, also, Felton v. Spiro, 78 Fed. 576, 581, 582, 24 C. C. A. 321.

The ruling in the case before us was not excepted to, nor is it shown that the affidavit of the bailiff was not considered by the court in ruling upon the motion. The case does not, therefore, strictly fall within the rule which authorized the review of the Mattox Case. As the liberty of the citizen is involved, we have, however, considered the assignment, based upon the alleged misconduct of the jury. The authorities are not in accord as to what misconduct of a jury or others will vitiate a verdict. In some, as in People v. Knapp, 42 Mich. 267, 3 N. W. 927, 36 Am. Rep. 438, it is held that the presence of the bailiff in charge of the jury in the jury room during their deliberations is such an invasion of the right of trial by jury as to absolutely vitiate the verdict in all cases without regard to whether any improper influences were actually exerted over the jury or not. And in Kansas v. Snyder, 20 Kan. 306, where the bailiff who had charge of the jury had been examined as a witness on behalf of the state, and had testified to material facts against the accused, his presence in the jury room during its deliberations was held to vitiate the verdict.

But in others it is held that if, under all the circumstances, it does not appear that the alleged misconduct influenced the verdict, a new trial should not be ordered upon that ground. Charlton v. Kelly, 156 Fed. 433-438, 84 C. C. A. 295; Fuller v. Fletcher (C. C.) 44 Fed. 34-38; State v. Allen, 89 Iowa, 49-51, 52, 56 N. W. 261; State v. Baughman, 111 Iowa, 71-74, 76, 82 N. W. 452; Gainey v. People, 97 Ill. 270, 37 Am. Rep. 109; People v. Priori, 164 N. Y. 199, 58 N. E. 669-672; Bernhardt v. State, 82 Wis. 23, 51 N. W. 1009-1011; State v. Hooper, 71 Mo. 245; Leach v. Wilbur, 91 Mass. 212. In Gainey v. People, 97 Ill. 270, 37 Am. Rep. 109, above, People v. Knapp, 42 Mich. 267, 3 N. W. 927, 36 Am. Rep. 438, and other cases are reviewed, and it is said:

"We prefer saying such a breach of duty on the part of the officer (his presence in the jury room) is a grave irregularity, which will or will not have the effect of vitiating the verdict, depending upon the circumstances in each particular case. Like most questions of that kind, which often arise in the course of a trial, we are of opinion it may be safely intrusted to the discretion of the court who tries the cause and this court would not feel at liberty to interpose, except where it can see there has probably been an abuse of that discretion."

This we believe to be the better rule. See United States v. Reid, 12 How. 361–366, 13 L. Ed. 1023; Mattox v. United States, 146 U. S. 140, 13 Sup. Ct. 50, 36 L. Ed. 917, above; Charlton v. Kelly, 156 Fed. 433–438, 84 C. C. A. 495; and Fuller v. Fletcher (C. C.) 44 Fed. 34–38.

The conduct of the jury in the case before us was quite improper, and, if its verdict was influenced because thereof, it should not be permitted to stand. But we are convinced that the verdict was not in the least influenced by the alleged misconduct. What volume of the "federal statutes" was taken to the jury room is not shown. If it may be presumed (which we do not intimate that it may be) that it was a copy of the Revised Statutes of the United States, or some other volume containing the section as amended upon which the indictment is based, and that the jury read the same, it obtained no other information than what the court had given it in its charge, for in that the court read the section in full and explained its meaning. It is not shown that any one connected with the prosecution caused the volume to be delivered to the jury. There is an entire absence of any showing that the verdict was influenced by the incident; and it is only urged in support of the assignment that the jury may have formed some erroneous impression of the law from reading the statute. If verdicts are to be set aside by the appellate courts for such reasons, few indeed will stand. But we are of opinion that, before a verdict can rightly be disturbed because of misconduct of the jury in reading papers or books not in evidence, it must be made to appear that the jury was influenced in arriving at the verdict by what they read, or that it was such that it would be presumed to have influenced the verdict. It is not so shown in this case, and such presumption cannot rightly be indulged from the facts shown. There was no error, therefore, in denying the motion for new trial.

The judgment is affirmed.