FREEMAN v. UNITED STATES.*

(Circuit Court of Appeals, Ninth Circuit. July 16, 1917.)

No. 2734.

1. POST OFFICE ⬅️35—FRAUDULENT USE OF MAILS—DEFENSES.

In a prosecution for using the mails in the execution of a scheme to defraud, it was not a defense that the letters charged to have been mailed were mailed in reply to decoy letters sent by post office inspectors, where the decoy letters were not sent for the purpose of suggesting the commission of a crime, but for the purpose of ascertaining whether defendant was engaged in using the mails in a scheme to defraud.

2. CRIMINAL LAW ☞1043(3), 1056(1)—NECESSITY OF OBJECTIONS AND EXCEP-
TIONS.

The objection that the letters charged to have been mailed were
mailed in answer to decoy letters was not available on appeal, where no
objection was made in the court below to the introduction of the letters on
that ground, and no exception was taken to an instruction that it was
immaterial that the letters were addressed to fictitious persons and sent
in response to decoy letters, and that it was the duty of the Post Office De-
partment, upon learning or suspecting that any scheme to defraud was
being operated through the mails, to see that the fraud was uncovered.

3. CRIMINAL LAW ☞371(1), 1169(1)—EVIDENCE OF OTHER OFFENSES—HARM-
LESS ERROR.

Defendant was charged with using the mails in the execution of a
scheme to defraud, whereby persons, irrespective of their symptoms or
whether they were in health or disease, would be informed by defendant
that they were afflicted with diseases which he could or would cure upon
payment of certain sums of money. A witness not named in the indict-
ment as one of those to whom letters were mailed testified to correspond-
ence with the concern operated by defendant and that he took treatment
in person. Held, that if, as defendant claimed, the treatment was for an
actual ailment and given in good faith, defendant was not injured thereby,
while, if the evidence indicated that the treatment was not in good faith,
and was for an alleged ailment from which the witness was not suffering,
it was competent for the purpose of showing want of good faith, and
as tending to show the intent with which the acts charged in the indict-
ment were done.

4. CRIMINAL LAW ☞1129(4)—ASSIGNMENT OF ERROR—SUFFICIENCY.

Where about 20 objections were taken to the testimony of a witness,
an assignment of error that the court erred in admitting the testimony
of such witness "as to what was done by the defendant prior to 1910,"
and in refusing to strike out "portions of such testimony," and "in over-
ruling each of the objections of defendant to the testimony of the said
witness," was insufficient, as it was not directed to any one of the objec-
tions to the testimony.

5. POST OFFICE ☞48(8)—CRIMINAL OFFENSES—ADMISSIBILITY OF EVIDENCE.

On a trial for using the mails in furtherance of a scheme to defraud,
whereby persons would be treated for diseases, whether afflicted there-
with or not, the indictment charged that the scheme was devised in May,
1912, and that letters were sent in execution thereof at different times
from July to November of that year. Held, that testimony of a former
employé of the concern with which defendant was connected, as to de-
fendant's connection therewith and the course of business dealing when
he was so employed in 1909 and 1910, was not so remote from the dates
charged in the indictment as to be inadmissible.

6. CRIMINAL LAW ☞1147—REVIEW—DISCRETION—PUNISHMENT.

The nature of a sentence in a criminal case rests in the discretion of
the trial court, and such discretion will not be reviewed by the Circuit
Court of Appeals in any case where the punishment assessed is within the
statutory limit.

In Error to the District Court of the United States for the First
Division of the Northern District of California; Maurice T. Dooling,
Judge.

Gideon M. Freeman was convicted of an offense, and he brings
error. Affirmed.

An indictment in five counts charged that the plaintiff in error, doing
business under the name of Dr. Jordan, L. J. Jordan Company, and Jordan
Museum of Anatomy, devised a scheme or artifice to defraud, or for obtaining

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

money or property by means of certain false pretenses, to be effected by means of the post-office establishment of the United States, the substance of which was that he should place or cause to be placed advertisements in newspapers of general circulation, or in letters, booklets, or other prints, setting forth in substance that Dr. Jordan was a physician practicing in San Francisco, and especially qualified to treat private diseases of men, and by means of said advertisements, letters, booklets, and other prints he then and there intended to cause or induce John Bammer, J. P. Millspaugh, George P. Alberts, Anson Ashford, and John Caroway, and divers other persons whose names are unknown, and the public generally, to open correspondence with Dr. Jordan by means of the post office, relative to their real or supposed ailments, which correspondence would be answered by the supposed Dr. Jordan by means of letters placed in the post office, stating that said persons, irrespective of their symptoms, or whether they were in health or disease, were afflicted with diseases which he could, cure, and would cure upon payment to him of certain sums of money, and the indictment set forth other details to show that the scheme was fraudulent. It charged, further, that the plaintiff in error, on July 2, 1912, for the purpose of executing said scheme, placed or caused to be placed in the post office, to be delivered thereby, a certain letter, upon which postage had been prepaid, addressed to John Bammer, Colusa, Cal., a copy of which letter was set out in the indictment. The other four counts were identical with the first, except that the letters were alleged to have been mailed to the other persons named in the indictment. Upon the trial the plaintiff in error was found guilty as charged, and he was sentenced to pay a fine of $1,000 and to be imprisoned for one year in jail.

Knight & Heggerty and Charles J. Heggerty, all of San Francisco, Cal., for plaintiff in error.

John W. Preston, U. S. Atty., and Annette Abbott Adams, Asst. U. S. Atty., both of San Francisco, Cal.

Before GILBERT and HUNT, Circuit Judges, and WOLVERTON, District Judge.

GILBERT, Circuit Judge (after stating the facts as above). [1, 2] It is contended that the writing and mailing of the letters which are set out in the indictment were not criminal, and do not constitute crimes, for the reason that the letters were solicited by the United States post office inspectors in letters written by them and sent through the mails to Dr. Jordan as decoy letters, that the government officers initiated the crime, and that the case is thereby brought within the principle of the decisions of this court in Woo Wai v. United States, 223 Fed. 414, 137 C. C. A. 604, and Sam Yick v. United States, 240 Fed. 60, —— C. C. A. ——. The ruling in each of the cases so referred to was based upon the ground that the government officers had suggested the crime and induced its commission, and that the offense did not have its origin in the mind of the accused. The distinction between those cases and the case at bar is plain. Here the accused was suspected of being engaged in using the mails in a scheme to defraud. It was to ascertain whether such was the case, and not to suggest the commission of a crime which otherwise would not have been committed, that the decoy letters were written. The case comes clearly within the doctrine of Grimm v. United States, 156 U. S. 604, 15 Sup. Ct. 470, 39 L. Ed. 550, in which it was said:

"It does not appear that it was the purpose of the post office inspector to induce or solicit the commission of a crime, but it was to ascertain whether the defendant was engaged in an unlawful business."

See, also, Goldman v. United States, 220 Fed. 57, 135 C. C. A. 625, and cases there cited.

The contention of the plaintiff in error is further answered by the fact that in the court below no objection on the ground which is now urged was made to the introduction of the decoy letters, nor was any exception taken to the instruction to the jury in which it was said:

"It is not material that such letter or letters was addressed to fictitious persons and sent in response to test letters, to decoy letters sent them by the post office inspectors. It is the business of the executive officers of the government to see that this law is enforced, and when the Post Office Department, through its representatives, in the discharge of their duty, learn or suspect that any scheme to defraud is being operated through the United States mails, it is their duty to see that the fraud is uncovered."

[3] Error is assigned to the admission of the testimony of Walker, a witness for the prosecution, as to correspondence which he had with the Jordan Museum, and to the denial of the motion of plaintiff in error to strike out the testimony of the witness that he took treatment in person. Walker, who resided at San Jose, testified that he had correspondence with the Jordan Museum, and that he had received letters purporting to be from Dr. L. J. Jordan, which letters he identified, and that after the first correspondence he visited the Jordan Museum and received treatment there from a supposed Dr. Jordan, a man who looked very much like the plaintiff in error. It is unnecessary to consider at length the testimony given by the witness. If it is true, as the plaintiff in error asserts, that the evidence shows that the treatment he received was for an actual ailment, and was given in good faith, the evidence could not have injured the plaintiff in error; on the contrary, its effect would have been to his benefit. But if the evidence indicated that the treatment was not in good faith, and was for an alleged ailment from which the witness was not suffering, it was competent for the purpose of showing the want of good faith in the conduct of the business in which the plaintiff in error was engaged. The evidence of the correspondence and evidence of the treatment were also clearly admissible as tending to show the intent with which the acts charged in the indictment were done. Colt v. United States, 190 Fed. 307, 111 C. C. A. 205; Thomas v. United States, 156 Fed. 897, 84 C. C. A. 477, 17 L. R. A. (N. S.) 720; Brooks v. United States, 146 Fed. 223, 76 C. C. A. 581; Kettenbach v. United States, 202 Fed. 377, 120 C. C. A. 505, and cases there cited.

[4, 5] The witness Boerner was called by the government to show the course of the business dealings of the Jordan Museum, for which he occupied the position of stenographer from May, 1909, to October, 1910. It is contended that the testimony was incompetent, for the reason that the indictment charged the scheme to have been devised in May, 1912, and the letters to have been sent at different dates from July to November of that year. It is to be observed, first, that the assignment of error is not sufficient to direct the attention of the court to any particular error in the admission of the testimony. It assigns as error the admission of testimony of the witness "as to what was done by the defendant prior to 1910," and the refusal of the court "to strike out portions of said testimony," and "in overruling each of the

objections of defendant to the testimony of the said witness." There were about 20 objections to the testimony, and the assignment is not directed to any one of them.

But, irrespective of the defective assignment, we think all the testimony was admissible. Boerner testified as to a course of dealing during the time while he was in the employment of the Jordan Museum, which was in harmony with that which the evidence disclosed as to the period covered by the indictment. He testified that the plaintiff in error was one of the directors of the company which carried on the business, that in his name was issued the license to do the business, for which $25 was paid quarterly, that the plaintiff in error had authority to sign checks, and that he received monthly his share of the profits of the business. The time referred to in the testimony of Boerner was not so remote from the dates charged in the indictment as to render the evidence inadmissible to show the course and methods of the business so conducted by the plaintiff in error and his associates, his relation to that business, the sending out of letters and circulars to correspondents in the forms that were used in the correspondence referred to in the indictment, and, in general, the commission of offenses of the same nature as those for which the plaintiff in error was indicted.

It is urged that the evidence is insufficient to prove the material allegations of the indictment, and that the court erred in denying the motion of the defendant, made at the conclusion of the government's case, to take the case from the jury. The presentation of that motion to the court below is ineffectual to bring the question of the sufficiency of the evidence before this court, for the reason that after the motion was denied, the plaintiff in error introduced evidence on his own behalf, and at the conclusion of the whole case, did not renew his motion.

[8] It is urged that, in consideration of the nature of the testimony, this court should modify the sentence and judgment, so as to omit the imprisonment of the plaintiff in error. To this it is to be said that the question of the nature of the sentence was one which rested in the discretion of the court below, a discretion which will not be reviewed in this court in any case where the punishment assessed is within the statutory limits. It is true that in United States v. Wynn (C. C.) 11 Fed. 57, and Bates v. United States (C. C.) 10 Fed. 92, it was held that a Circuit Court, on appeal from a District Court, was not bound to impose the same sentence as was imposed by the court below; but those rulings were made in view of the peculiar language of the third section of the act of March 3, 1879 (20 Stat. 354, c. 176), which provided that:

"In case of an affirmance of the judgment of the District Court, the Circuit Court shall proceed to pronounce final sentence and to award execution thereon."

There is no such provision in the act creating the Circuit Court of Appeals. Those courts are given only appellate jurisdiction to review, by appeal or by writ of error, final decision in the District Court.

We find no error. The judgment is affirmed.