## LANCASTER et al. v. UNITED STATES.
### No. 5699.

Circuit Court of Appeals, Fifth Circuit.
March 28, 1930.

United States, intoxicating liquor for beverage purposes. It was brought against Lancaster, Scott, Tate, Williams, and Colson, who were convicted, and against three others who were acquitted. All who were convicted, except Colson, have joined in this appeal. Of the overt acts alleged, to effect the object of the conspiracy, the first is that on July 31, 1927, the four appellants made a trip from Tampa to Havana, and the second that on August 7th they returned from Cuba to Florida. Other overt acts allege that on August 12th appellants Scott, Lancaster, and Tate held a conference with the defendant Colson; that on the 16th Scott arrived in Cuba; that later on in the same month Scott caused 300 cases of liquor to be brought from Cuba into the United States at or near the mouth of the Suwannee river in Florida; and that he and others of the defendants caused the liquor to be transported up the river by boat and overland by automobiles and trucks to the town of Trenton and other places unknown to the grand jury.

Evidence adduced by the government was sufficient to prove the conspiracy and the overt acts. Walter Depew testified that he was a fisherman, lived at Cedar Keys, and was well acquainted with the adjacent waters at and near the mouth of the Suwannee river; that on August 10 he was employed by Scott to accompany him to Havana, to come back from Cuba on a boat carrying liquor, and to navigate that boat from a point in the Gulf off the Cedar Keys lighthouse to Ranch Bar shoals near the mouth of the Suwannee river; that he went to Scott's home with him, and was present at the conference held on the night of the 12th by Scott, Lancaster, and Tate with Colson, at which Colson agreed to join the conspiracy and contribute $1,700 toward the purchase price of liquor and the expense of transporting it; that he accompanied Scott to Havana, occupied the same room with him at a hotel, and was present when he purchased 300 cases of liquor from a business concern known as Ron Caney; that the liquor was loaded on a schooner at Sagua la Grande, where Scott left him; that he came on this schooner, which, after a voyage lasting about three days, landed safely at Ranch Bar shoals, where Scott, Williams, Colson, and the defendants who were acquitted came to it in two small boats; that the liquor was transferred into one of these small boats, taken up the river, transferred to automobiles, and taken in them to a barn at Trenton where he saw the appellant Tate.

This witness testified, over objection and exception, that at the time he was employed

Thomas W. Fielding, of Gainesville, Fla., H. S. Phillips and Wm. M. Gober, both of Tampa, Fla., for appellants.

Fred Cubberly, U. S. Atty., and G. E. Hoffman, Asst. U. S. Atty., both of Pensacola, Fla.

Before BRYAN and FOSTER, Circuit Judges, and DAWKINS, District Judge.

BRYAN, Circuit Judge.

The indictment in this case charges a conspiracy unlawfully, first, to import from Cuba, and then to transport and sell in the

to make the trip Scott told him that he and the other appellants had taken a trip to Havana, and had made all arrangements to get the liquor. He was corroborated as to the transfer of the liquor from the schooner and the taking of it up the river by J. R. Richard, who testified that he operated the small boat to which the cargo was transferred, and to some extent by his brother, who testified that Scott and two other men, who were identified by Richard as Colson and Lancaster, offered to employ him to go in his boat to meet the schooner, but that, being unable or unwilling to go, he took them to Richard's house.

The defense of appellants was a general denial, in support of which they each offered evidence tending to prove an alibi. They admitted that they took the trip to Havana and returned on August 7th, but denied that they held a conference on August 12th. Scott denied that he took Depew to Havana, although he admitted that they arrived there on the same boat from Key West, and that they were registered in Havana at the same hotel; he said he did not remember whether they occupied the same room. On the 17th Scott deposited in a bank at Havana New York draft for $5,500 and travelers' checks for $1,000. The draft was indorsed by "Ron Caney, S. A., M. Casabielle, Presidente." Scott testified that this indorsement was merely for the purpose of identification, and that he did not pay any of it to the indorser, that he did not know where his pass book was, that he drew the whole amount of his deposit out by checks, received his canceled checks, but did not have them with him or know where they were. A charge to the effect that it was not necessary to prove that the conspiracy was successful was excepted to on the ground that it was misleading, in that the court failed to charge also "in that connection" that, in order to convict, the jury must believe that some one or more of the overt acts had been committed. In another part of the charge the court instructed the jury that at least one of the overt acts must be proved beyond a reasonable doubt.

After this appeal was taken, the district court was given leave by order of this court to pass on a motion for new trial, which was based on the grounds (1) of Walter Depew's sworn admission after the trial that he was satisfied he was mistaken in his testimony identifying Lancaster and Tate as parties to the conference of August 12th, and identifying Tate as the person whom he saw at the barn where the liquor was stored; (2) of the bias and prejudice of W. F. Osteen, foreman of the jury; (3) of misconduct of jurors; and (4) of newly discovered evidence.

That motion, after a full hearing of evidence, in the form of supporting and opposing affidavits, was denied by the district judge. The witness Walter Depew, after making affidavits sustaining the first ground, contradicted them by stating that he was not mistaken in his testimony given at the trial as to the identity of any of the appellants. By way of explanation he stated that the exculpating affidavits were brought to him already prepared by Tate, who wanted them for the purpose of having the prison sentences imposed upon him and Lancaster changed to fines; that he read the papers handed to him by Tate hurriedly and without understanding their full contents or meaning. In support of the second ground, three people stated that before the trial Osteen, who later was foreman of the jury, told them that he thought or knew that all the defendants were guilty, and hoped they would be convicted. One of them, L. S. Crews, further stated that to his knowledge Osteen was unfriendly to appellants Tate and Williams, because Williams had several times arrested Osteen's brothers, and Tate had testified against them. Osteen denied that he had made the statement attributed to him or that he had any bias or prejudice against any of the defendants. Several of the jurors, including Osteen, made affidavits to the effect that a majority of the jury persuaded the minority to agree to convict appellants upon the representation that a recommendation to mercy would have the effect of requiring the court to impose fines, and that a verdict would not be received which did not either convict or acquit each defendant. Several jurors stated that they had serious doubt about the guilt of any defendant, and would not have agreed to the verdict rendered, which contained a recommendation to mercy, except for the representation made as to the effect of the verdict upon the sentence.

The newly discovered evidence which was made the basis of the fourth ground of the motion consisted of the affidavits of Joe Figueredo and M. Casabielle of Havana, and of a statement of the Bank in Havana in which Scott deposited the New York draft and the travelers' checks. Figueredo stated that he met Scott on the latter's first trip to Havana, that Scott, during his second visit in August, requested affiant to indorse the New York draft, but, as affiant was not personally known at the bank, Casabielle at his request indorsed the draft, which was then deposited to Scott's account, and that no part of the proceeds thereof was paid to Casabielle. Casabielle's statement as to the transaction with the bank was substantially the

same as that made by Figueredo. He also stated that he did not receive any money from Scott, and further that neither he nor his firm had ever sold any liquor to him. The bank's statement of Scott's account simply shows a credit of $6,500 and a debit of $3,500 on the 17th of August; a credit of $5 and a debit of $3,000 on the 20th of August.

The contentions of appellants in support of their assignments of error are that the trial court erred (1) in admitting in evidence the alleged statement, by Scott to the witness Walter Depew, that the appellants Lancaster, Williams, and Tate, while on a trip with Scott to Havana, had acted in concert with him in making arrangements to import liquor from Cuba into Florida; (2) in submitting to the jury the first and second overt acts; (3) in charging the jury without qualification that it was not necessary for the government to prove that the conspiracy alleged had been successful; and (4) in denying the extraordinary motion for a new trial.

The ground of the objection to Scott's admission to Depew of the previous trip to Havana and of the arrangements to transport liquor from Cuba into the United States is that it was not admissible as against the appellants not present, because there was no evidence of the existence of a conspiracy prior to a subsequent conference between them. It is a fair inference from the government's evidence that Scott had made arrangements to have liquor brought in from Cuba before he offered to employ Depew to act as pilot. The trip of all the appellants, which had just been completed, was a circumstance that was consistent with the theory that they were parties to a conspiracy which had been formed prior to the time of Scott's conversation with Depew, when it is considered in connection with the conference at which they were all present two days later for the purpose of inviting Colson to join and contribute his money toward a furtherance of a previously existing plan with which all the appellants appeared to be familiar. It is thus shown that within a week of their return from Cuba they held a meeting at which they received Colson's financial assistance, and agreed that one of them should return to Cuba with the pilot who had previously been employed to carry out a plan that had been formed at some time before the meeting that was then being held. The jury were authorized by this evidence to infer that a conspiracy was formed at or before the trip of appellants to Havana. It follows, therefore, that it was not error to admit proof of the first and second overt acts. The criticism of

the charge complained of is highly technical, and is without merit. The district judge was not obliged to give charges on conspiracy and overt acts in the same breath. It is enough that he included in his charges the instruction that an overt act was necessary to complete the offense.

Whether a new trial should have been granted was a question for the District Court to determine in the exercise of its sound discretion. In our opinion, the denial of that motion was not an abuse of discretion. On the trial Depew was positive in his identification of each of the appellants. The trial court might well have believed that he was induced to cast doubt upon his testimony identifying Lancaster and Tate by the latter's personal appeal and representation that his sentence would be changed from imprisonment to a fine. Whatever weight could otherwise be attached to Depew's affidavit was lost by his counter-affidavit repudiating it and confirming his original testimony. We are unable to say that the court erred in refusing to set the verdict aside on the ground of the bias and prejudice of Osteen, the foreman of the jury. The fact that he voted to acquit three defendants, who according to all the testimony for the government were guilty, would seem to throw some doubt upon the accuracy of the statements attributed to him and to justify the court in accepting as true the denial which he made.

If, as affiant Crews stated, Osteen was prejudiced against Tate and Williams because they had prosecuted Osteen's brothers, it is most unlikely that they would have accepted him without challenge as a juror. It is not to be assumed, in the absence of a showing by these two appellants to the contrary, that they had less knowledge than Crews had concerning Osteen's mental attitude toward them. The charges of misconduct of the jury find no support except in the affidavits of some of the jurors as to the method of arriving at a verdict. Corruption of the jury is not claimed. The general rule is that jurors will not be heard to impeach their own verdict. While the Supreme Court has refused to hold that there may not be exceptions to this rule, and has recognized an exception in Mattox v. United States, 146 U. S. 140, 13 S. Ct. 50, 36 L. Ed. 917, yet the trend of the later cases is more strictly to limit, if not altogether to deny, exceptions to the rule. Hyde v. United States, 225 U. S. 347, 383, 32 S. Ct. 793, 56 L. Ed. 1114, Ann. Cas. 1914A, 614; McDonald v. Pless, 238 U. S. 264, 35 S. Ct. 783, 59 L. Ed. 1300.

Under the last cited authority it was the duty of the trial court not to give any weight to the affidavits of the jurors. The affidavits taken in Havana do not contain any newly discovered evidence, but merely corroborate testimony given by Scott at the trial. It does not appear that Figueredo could possibly have known that Scott did not purchase liquor at the place Depew said he did; and Casabielle's statement would only have a tendency to prove that he did not procure it from Ron Caney. Neither affidavit is inconsistent with the purchase of liquor at some other place in Havana. The fact that the New York draft was indorsed by Ron Caney and Casabielle tends strongly to corroborate Depew's testimony to the effect that Scott bought the liquor from Ron Caney, and that testimony is not discredited by statements that the draft was deposited to Scott's credit in the bank, for it might well be that the liquor was paid for with the checks drawn against that deposit. Scott admitted that his canceled checks came back to him, but failed to produce them at the trial or to account for their loss. It seems that it ought to have occurred to appellants to be prepared to clear up at the trial any question about the disposition of so large a sum of money, which it so happens was deposited in the form of a draft bearing the indorsement of the very house from which, according to the testimony of the fisherman Depew, the liquor in question was purchased. It is no answer to say that it was not known to Scott or the other appellants before the trial what testimony Depew would give; because one of the overt acts alleged the purchase by Scott of a large quantity of liquor in Cuba, and appellants cannot well claim to be surprised at proof on behalf of the government, either that the purchase was made from the Havana liquor dealer that indorsed the draft or that the liquor was paid for with, or out of the proceeds of, a draft that had just been deposited by Scott with a bank in Havana.

The judgment is affirmed.