## CITY OF AMARILLO, TEX., v. EMERY et al.
### No. 6839.

Circuit Court of Appeals, Fifth Circuit.

March 5, 1934.

Appeal from the District Court of the United States for the Northern District of Texas; James Clifton Wilson, Judge.

Suit by H. Emery against the City of Amarillo, Texas, wherein the American National Insurance Company intervened. Judgment for plaintiff, and defendant appeals.

E. A. Simpson, of Amarillo, Tex., for appellant.

W. S. Birge and Wales H. Madden, both of Amarillo, Tex., for appellees.

Before BRYAN, FOSTER, and HUTCHESON, Circuit Judges.

FOSTER, Circuit Judge.

H. Emery is the owner of a certain strip of land in Amarillo, Tex., with a building thereon. The city built a viaduct on a public street in front of part of the property and Emery brought suit to recover consequential damages, alleged to have been caused by the impairment of his rights of vision, ingress, egress, and accessibility. The American National Insurance Company, holder of certain vendor's lien notes on the property, intervened and joined with the plaintiff. There was a verdict for $7,750 in favor of plaintiff. The city moved for a new trial on the ground that the jury had been guilty of such gross misconduct as to vitiate the verdict. The motion was overruled and judgment was entered on the verdict. This appeal followed.

Error is assigned to the overruling of special exceptions to the petition which set up that no cause of action was shown because the plaintiff had not alleged that the defendant was guilty of negligence in the construction of the viaduct.

Article 1, section 17, of the Constitution of Texas of 1876, provides as follows: "No person's property shall be taken, damaged, or destroyed for or applied to public use without adequate compensation being made, unless by the consent of such person; and, when taken, except for the use of the State, such compensation shall be first made, or secured, by a deposit of money * * *."

There are many cases holding that a municipality may not be held for consequential damages resulting from the improvement of streets or highways, where there is no actual taking of property, unless negligence in the doing of the work is alleged and proven. We need not review these cases as most of them depend upon the application of general law and are not in point where there is a constitutional provision such as above quoted. We think it plain that, under the provisions of the Texas Constitution, it was not necessary to either allege or prove negligence. Dallas County v. Barr (Tex. Civ. App.) 231 S. W. 453; City of Brady v. Cox (Tex. Civ. App.) 48 S.W.(2d) 511. It was not error to overrule the exceptions.

Error is assigned to the denial of a new trial. The following appears from the bill of exceptions: In support of the motion, for the purpose of showing misconduct of the jury, appellant offered the affidavits of J. M. Beard and H. C. Brumley, members of the jury. The affidavit of Beard is rather lengthy and deals with various matters. It need not be quoted in full. In substance, it shows: That after the case was finally submitted to the jury for consideration, and before the verdict was returned, he made at least two trips down to the viaduct on Fill-

more street, where the property involved in the suit was located, and viewed the property; that according to his memory, during the discussion of the case, before arriving at the verdict, some of the jurors stated that they had passed by to view the property; that during the deliberations of the jury, W. N. Patterson, another juror, stated that he has had the property listed for sale at one time and knew when it could have been sold for $75,000; that, while the jury was discussing the testimony given by a defense witness, Bush, to the effect that the property had been sold for $10,000, this juror stated he had taken the matter up with one Brady and had made a trip and found out about the property and he knew it did not sell for $10,-000 as the witness Bush had testified but had sold for more; that the juror Patterson gave further testimony as to the value of the property; that during the time the jury was deliberating on the case, trying to arrive at a verdict, some one or more on the jury stated that during the trial of the case they had had a discussion at a Rotary Club dinner with one of the defendant's witnesses concerning his testimony, after the witness had testified; that this witness had testified from notes or a typewritten report, and when he was asked as to how he had arrived at the statement made by him on the stand, the witness became confused and was not able to explain the testimony he had given in court. The affidavit of Beard was supported in several material matters by the affidavit of the juror Brumley. Appellant had several members of the jury present and offered to have them sworn as witnesses.

The court of his own motion refused to permit any of the jurors to be sworn as witnesses and refused to hear their testimony. The court stated, in substance, that he would consider as true the statements contained in the affidavits of Beard and Brumley and found that the act of any of the jurors in viewing the premises was misconduct but would overrule the motion for a new trial as it is not the policy of federal courts to allow jurors to impeach their verdict.

It is the general rule in federal courts that the allowance or refusal of a new trial rests in the sound discretion of the trial court and error cannot be assigned thereto. It is also the general rule that a juror will not be permitted to impeach his verdict. However, there are exceptions to both rules. While a juror may not testify to a matter resting in his personal consciousness, affidavits of jurors, which show overt acts constituting misconduct or that extraneous matters that might influence the jurors have been brought to their attention, are admissible. Mattox v. U. S., 146 U. S. 140, 13 S. Ct. 50, 36 L. Ed. 917.

The controlling fact to be established was the depreciation in the fair value of the property caused by the building of the viaduct. The testimony was in sharp conflict as to the fair value before and after that event. There is no doubt that if any of the jurors discussed the testimony of witnesses with them, out of court, or went about the neighborhood collecting unsworn testimony as to the value of the property, such actions would be gross misconduct vitiating the verdict. The question is different from what it would have been if the jurors had been called only to prove misconduct which occurred in the jury room during their deliberations. In the circumstances disclosed it was reversible error to decline to consider the affidavits in ruling on the motion for a new trial.

As what has been said above requires a reversal, it is unnecessary to discuss other errors assigned, as they will probably not again appear on a new trial of the case. The judgment appealed from is reversed, and the cause is remanded for a new trial.

Reversed and remanded.