## UNITED STATES v. 120,000 ACRES OF LAND.

### Civil Action No. 51.

District Court, N. D. Texas, San Angelo Division.

Oct. 20, 1943.

See, also, 50 F.Supp. 754.

Upton & Upton, of San Angelo, Tex., for the motion.

J. Edward Johnson, Sp. U. S. Atty., of Brownwood, Tex., opposed.

ATWELL, District Judge.

Among the many controversies growing out of this interesting condemnation cause, is one by H. Ford Glass, from whom was taken 408 acres, and one by Modie M. Glass from whom 357 acres were taken. These two cases were tried together because the lands joined, and it seemed a practicable joinder.

The testimony seemed to indicate that Modie Glass's land was the better, it being what was called "valley" land. Upon it there were no improvements save fences, water, etc. The Ford Glass lands were more uplands and of lesser value but had other improvements besides the fences.

Under appropriate instructions the jury fixed the value of each tract at $40 per acre. The attorney for Ford Glass contends that the jury did not give Ford Glass the benefit of his improvements in the lump sum finding of each. In his attempt to secure, as he terms it, a "correction of the judgment," he caused to be subpoenaed eleven of the jurors who, at a hearing of the motion, and in the absence of each other, testified that the difference in the value of the land was considered by them and that the lump average per acre fixed for each of the claimants included such improvements as Ford Glass had.

One of the jurors was not clear in memory and thought that the amount did not include improvements. The case was tried at the beginning of this term and some two weeks have elapsed since its trial.

 While the testimony of the jurors clearly disproves the grounds of the motion and makes it imperative that it be overruled, it is not amiss to call attention to the

rule in the United States court with reference to a matter of this sort.

◼ Because of public policy, a juror is not permitted to impeach his own verdict, nor to testify to his own misconduct. If such were not the case, the court would be in the attitude of holding an inquisition after jury trials in which the subjects of inquiry would be the jurors themselves. Jurors are free from any such espionage, attack, inconvenience, or inquiry. When a verdict is returned, they are polled and they are then asked, "So say you all?"

This question is not an open one. Such cases as Davis v. United States, 5 Cir., 47 F.2d 1071; McDonald v. Pless, 238 U.S. 264, 35 S.Ct. 783, 59 L.Ed. 1300; Lancaster v. United States, 5 Cir., 39 F.2d 30; Williams v. United States, 6 Cir., 3 F.2d 933; Hyde v. United States, 225 U.S. 347, 384, 32 S.Ct. 793, 56 L.Ed. 1114, Ann.Cas.1914A, 614, hold that the testimony of jurors should not be received to show matters which essentially inhere in the verdict and necessarily depend upon the testimony of jurors. This general doctrine is supported by City of Amarillo v. Emery, 5 Cir., 69 F.2d 626; Salibo v. United States, 5 Cir., 46 F.2d 790; Beatty v. United States, 6 Cir., 27 F.2d 323; Mattox v. United States, 146 U.S. 140, 13 S.Ct. 50, 36 L.Ed. 917.

◼ Motives and influences which affected the deliberations of a juror are inadmissible, either to impeach or support a verdict. Facts bearing upon the question of any outside influence is another matter. The evidence of jurors as to things that occurred inside the jury room may not be given. What occurred there is sacred. But testimony as to outside acts, declarations, or information will be heard. This is the rule in the national court, even though state courts may act differently. See Doss v. Tyack, 55 U.S. 297, 14 How. 297, 14 L. Ed. 428; McDonald v. Pless, 4 Cir., 206 F. 263. This thought is italicized in those instances in which a private party seeks to use a juror as a witness to impeach a verdict. Even in the case of Colt v. United States, 8 Cir., 190 F. 305, the court refused to set aside a verdict, when it was shown that one of the jurors, while deliberating, secured a statute and read that portion upon the case which was being tried.

Great care and constant vigilance are exercised to prevent extraneous and outside influences. An equal respect for the verdict after rendition in so far as jury room deliberations are concerned is necessary. That there are notable exceptions does not lessen the value of such public policy.

The motion must be overruled.